(No. 74-CC-0110—

JEAN MOLDENHAUER, Claimant, *v.* STATE OF ILLINOIS, Respondent.

*Opinion filed December 6, 1978.*

FINN, LESUERUR & CHALLOS, by THOMAS R. CHALLOS, JR., Attorneys for Claimant.

WILLIAM J. SCOTT, Attorney General; PEGGY BASTIST and PAUL SENGPHIEL, Assistant Attorneys General, for Respondent.

HOLDERMAN, J.

This is a claim for personal injury and property damages sustained by Claimant, a 28 year old female, as a result of an automobile accident that occurred on April 25, 1973, at Harlem Avenue (Route 43), Peotone, Illinois, one-half mile north of Vollmar Road.

The evidence clearly showed that the State of Illinois was responsible for the maintenance of the highway at that time. The evidence further showed that the road was in a deteriorated condition and preparations were being made for the resurfacing of said highway.

It is Claimant's contention that she was driving her car south on Harlem Avenue, struck a hole in the

roadway and swerved onto the west shoulder for a short distance, then came back on the paved portion of the highway and struck a second hole, and then skidded across the center line into the northbound lane of traffic causing a head on collision.

The accident occurred on April 25, 1978, at approximately 4:30 p.m.

This Court has passed several times upon the liability of the State for defects in state highways that have caused accidents. One of the more recent cases is in *29 Ill. Ct. Cl. 10,* which lays down the rule that Claimant must show Respondent had, or should have had, knowledge of alleged defects before recovery can be had.

Claimant in the present case testified that this was a road she traveled very infrequently and consequently had no prior knowledge of the defects that were alleged to have existed. The posted speed limit was 65 m.p.h., and there is no evidence to show that Claimant was exceeding that limit. The weather was clear and the road was dry. Witnesses testified to the fact that Claimant was driving between 45 and 50 m.p.h.

An eye witness to the accident, Arthur Faber, testified that at the time of the accident the southbound lane of Route 43 from Oak Park Avenue to the scene of the occurrence, a distance of about one mile, was a series of chuckholes that were up to four feet in diameter and quite deep. He also identified two very large holes he saw in the southbound lane of Route 43 right after Claimant's accident. He further testified:

"If you were driving your vehicle in a straight line equidistant between the west edge of the road and the center of the road in the southbound lane of traffic, your vehicle would come in contact with any of those holes. I believe one of them was far enough to the right side to strike the right front tire and the other one I am pretty fairly sure was extending far enough out where you could almost hit it with your left front tire."

The operator of the other car involved in this occurrence, Rose Marie Hernandez, testified that the holes were as wide as the southbound lane of traffic. She further testified that on the morning of the accident she took Route 43 to go to work and was traveling southbound just north of Vollmar Road. She testified these two holes were in the roadway that morning and to avoid them, she slowed down, went into the northbound lane and then back into the southbound lane which was her normal procedure.

James Floyd, another eyewitness, testified that one of the holes was a good wheel deep and if you hit the hole, you could bury your wheel in it. He also described the hole as being so deep you could drop a flat tire in it and you wouldn't see it. This same witness testified that on the weekend before the present accident, he was driving over this same highway and hit the same hole Claimant's car hit, the force of which impact blew a tire on his car, and that in fact several cars immediately behind his car hit the same hole and blew their tires.

Peter J. Kelly, Jr., State Trooper, testified that he was at the scene of the accident shortly after it happened. He testified that he had received complaints from citizens about the condition of the roadway prior to the accident. He stated the first complaint he received was approximately one week before the accident which he reported to the radio dispatcher at headquarters. The second complaint was from a gentleman at a gas station at 183rd and Harlem, which is about two miles from the scene. After receiving this complaint, he stated he again advised headquarters of this information. He testified he received another complaint on Easter Sunday and at that time the deskman advised the highway department of the situation. This was three days before this occurrence. Trooper Kelly

also was of the opinion that the accident was caused by Claimant's vehicle striking the hole in the roadway.

Walter Madison, a civil engineer with the Department of Transportation, Maintenance Department, testified that Illinois Route 43 was his area of duty in April, 1973, that he was familiar with the area where the accident took place, and that he remembered the particular hole that was alleged to have caused the accident. He further testified this hole had been repaired three or four times prior to April 25, 1973. The repair work he was talking about consisted of a cold mix patch which is composed of stone, sand and asphalt which is placed in the hole. The hole was described by several witnesses as being three to four feet in width and seven to eight inches in depth. Testimony was to the effect that cold patch repairing, particularly at the time repairs were being made on this hole, is not very satisfactory but is the only method of repair that could be done until warmer weather set in. The evidence is to the effect that some of these repairs last for a very short time.

Joseph Kostur, District Safety Claims Manager for the Illinois Department of Transportation, testified that the State made repairs on these particular holes on April 21, 1973, at 8:56 p.m. and that it was done by means of a cold patch which is only temporary repair. Mr. Kostur further testified that in April of 1973, the month of the accident, there were approximately 14,000 cars per day traveling on Route 43 at the scene of this accident. There is repeated and uncontradicted evidence that this was a very heavily traveled highway and that it was in extremely poor condition. The evidence also indicated that the State never posted any signs along the highway warning of the rough road and to reduce the speed limit. Evidence also indicated

that several holes existed and these holes were not barricaded nor blocked off.

State Trooper Kelly testified that he examined the scene of the accident within a few minutes after its occurrence, that he could follow the tire marks of the car driven by Claimant, and that it was his opinion the holes in the road were a contributing factor to this accident.

Barry Tucker, an employee of the Illinois Department of Transportation, testified that he came upon the scene of the accident shortly after its occurrence and that Claimant's car was on the east shoulder of the road facing southbound and approximately six or seven feet off the highway. He testified that the other car, a white Chevrolet with black vinyl top that had also been involved in the accident, was on Harlem Avenue entirely within the northbound traffic lane and was facing northeasterly. He stated both of the occupants were in their cars when he arrived and Claimant was sitting behind the wheel of her car, slumped over the steering wheel, and appeared to be in a very poor physical condition, unconscious, with blood running from her head, cuts, etc. He testified that Exhibit No. 4 accurately and truly portrayed the scene of the occurrence. He stated he could determine where the accident occurred by the dirt, broken glass, etc., that was on the pavement. He further testified that the roadway was broken up with consistent pot holes in many areas near the scene. It was his opinion that one of the holes appeared to be a fresh hole and he did not see any evidence of repair work having been done to that particular hole.

Arthur G. Faber testified that on April 25, 1973, he was heading south on Harlem Avenue when he saw the

accident in question. He testified he had traveled that road at least twice a day since 1971. He stated traffic was medium to heavy at the time the accident occurred, that the road was full of chuckholes, and it was his opinion that the road was in very poor condition. He stated there were small holes and large holes, some two to four feet in diameter and quite deep, and that these holes were in existence prior to the time of the accident. He stated they had been there all winter, had been patched on several occasion, but kept reappearing.

The evidence is overwhelming to the effect that this was a very poorly maintained highway. The fact that a contract had been let to resurface the same and work was about to begin emphasizes this fact.

Evidence was introduced to the effect that none of the repairs were of too recent date. It is clear that the State had actual, as well as constructive, knowledge of the delapidated condition of the highway, had failed to erect barricades or to post warning signs, or do any other acts to warn the general public.

Claimant, before she can recover, must prove she was free from contributory negligence. It is clear from the record that she was traveling the highway as any motorist has a right to do and that her driving did not in any manner contribute to the accident. She testified that she hit the first chuckhole, went off the road, came back on and hit a second one, and this threw her into the path of the car in the northbound lane.

Claimant was working for the State at the time of her injury at the State Mental Hospital at Tinley Park. She was able to speak several languages and was an expert in communications. After the accident, Claimant was taken by ambulance to the South Suburban Hospital and was in the intensive care unit for

ten days. According to her Board Certified surgeon, Dr. Conrad Urban, she suffered a severe cerebral concussion with loss of consciousness, mental confusion, and lethargy, along with retrograde amnesia, a partially collapsed left lung with blood in the chest cavity, pulmonary contusion, fractures to the second and third ribs on the left side, contusion to the abdominal wall, and multiple lacerations of the face, left leg, right arm and right forearm.

Her plastic surgeon testified that even with plastic surgery the scars on her face and other portions of her body could not be erased and would be permanent.

Claimant testified that she has suffered diminution of memory and mental confusion since the accident. She also testified that when she went back to work she could not do the same type of work at the Tinley Park Mental Health Center where she had been a lead psychologist and administrator of Sub-region 14 dealing with mentally retarded individuals. She stated she held a bachelor's degree in English Education from Purdue University, a master's degree in English from Chicago State University, and was enrolled at the time of her accident in a Ph.D. program in linguistics at the Illinois Institute of Technology.

She stated when she first returned to work, she found she could only work two days a week until October 1973. At the time of the trial, she was still a psychologist for the Tinley Park Mental Health Center, but she is no longer administrator of her Sub-region 14, does not deal with the Spanish-speaking community, and no longer had a staff of persons working under her. She is presently gathering IBM data from a machine.

While Claimant herself was unable to testify as to the conditions immediately prior to the accident due to her loss of memory, the testimony of other eye witnesses definitely shows a lack of contributory negligence on the part of Claimant and this was not rebutted by the State. It appears therefore that the proximate cause of the accident was the negligent condition of the highway.

This Court has previously held that although the State is not an insurer of all persons who travel on its highways, it does have an obligation to keep them in a reasonably safe condition for motorists traveling over them. If the highways are in a dangerously defective condition, the State is negligent if it does not notify the public of such condition. *Mitchell v. State of Illinois, 24 Ill. Ct. Cl. 61; Sisco v. State of Illinois, 24 Ill. Ct. Cl. 306.*

In the case of *Mary Louise Walla v. State of Illinois, 26 Ill. Ct. Cl. 338,* this Court held that while the State of Illinois is not an insurer of every accident that occurs on its public highways, it does have the duty to exercise reasonable care in the maintenance and care of its highways in order that defective and dangerous conditions likely to injure persons lawfully on the highways shall not exist. The Court further held that "posted signs must give adequate warning of the particular hazard which exists."

In the case of *Scudiero, et al v. State of Illinois, 26 Ill. Ct. Cl. 457,* this Court laid down the rule that before Claimants may recover they must prove by a preponderance of the evidence (1) that Respondent was negligent; (2) that the negligence was the proximate case of the accident; (3) that Claimants were free from contributory negligence; and (4) damages. In the same case, this Court stated that although the State is not an

insurer of all who travel on its highways, it does have an obligation to keep its highways in a reasonably safe condition for motorists traveling over them. If the highways are in a dangerously defective condition the State is negligent if it does not notify the public of such condition.

The most difficult problem to decide in this matter is one of damages. Claimant is asking for the maximum recovery of $100,000.00.

The out-of-pocket was $8,356.29 of which the car loss (total) was $1,425.00 and the loss of pay was $2,913.79. The medical and anticipated plastic surgery exceeds $4,000.00.

There is also a claim for memory problem which is highly speculative. The evidence of permanent scarring on the face, right arm, right wrist, both legs, back, thighs, and left knee is graphic and realistic.

The Court feels the claim for $100,000.00 is excessive. Claimant is hereby awarded the sum of $8,356.29 for out-of-pocket plus $20,000.00 in compensation for permanent scarring, for a total award to Claimant in the amount of $28,356.29.