44

(No. 82-CC-0385— )

CATHY M. RAINIERI, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed August 20, 1987.*

LANE & MUNDAY (MARTIN E. KLEIN, of counsel), for Claimant.

NEIL F. HARTIGAN, Attorney General (RALANDA WEBB, Assistant Attorney General, of counsel), for Respondent.

RAUCCI, J.

This is a claim brought by Claimant, Cathy M. Rainieri, for personal injuries sustained by her on September 7, 1980, when her car struck a guardrail on an overpass and fell to the highway below.

On September 7, 1980, at approximately 4:55 p.m., Claimant was operating her vehicle in a westerly direction on Cermak Road at its overpass over Interstate 294. There was a metal guardrail along the northern edge of the westbound lane of Cermak Road at the point it crosses over Interstate 294. Claimant lost control of her car on the overpass, went through the guardrail at the far western edge of the north side of the bridge deck, and crashed to the ground on the west shoulder of the southbound lanes of I-294, immediately north of the overpass.

On the day in question it had rained prior to the

accident. However, at the time of the accident the rain had subsided to a light drizzle. The speed limit at the point in question was 50 miles per hour, and Claimant was driving at or below the posted speed.

Claimant was seriously injured as the result of the accident.

Claimant's theory of the case is set forth in paragraph 7 of her complaint:

"7. That at the time and place aforementioned, the vehicle then and there operated by Claimant did strike a pothole in the roadway causing the Claimant to lose control of her vehicle; as it swerved violently and crashed through the adjacent railings down to the roadway below."

The complaint charges Respondent with negligent maintenance of Cermak Road.

Claimant's exhibit 1 is a diagram of the path of her car. Claimant's exhibits 2, 3, 4, 5, and 6 are photographs of a pothole in Cermak Road east of where the car went through the guardrail. The parties entered into a stipulation that if John R. Knepper were called to testify he would testify that he inspected the overpass after the accident and saw a large pothole at the east end of the bridge, approximately 75 yards east of where the car left the bridge. There is no testimony in the record giving the dimensions of the pothole. Claimant's exhibits 8, 9, and 10 show a different pothole apparently west of the accident scene.

It was further stipulated that if William D. Peters, Jr., were to testify he would testify as follows:

"° ° ° at the time of the occurrence he was traveling in the left eastbound lane of Cermak Road at which time he observed the claimant's vehicle suddenly veer to its right and break through the guardrail and descend downward; the claimant's approximate speed was the posted speed (55 miles per hour); it had just finished raining and the road was slick and wet."

The Claimant's testimony is as follows:

"Q. Now, as you were driving west on Cermak approaching I-294, did you have occasion to notice anything unusual or hear anything unusual?

A. It felt like, you know, I hit something. The car jolted.

Q. *Do you know where in your car you heard that or felt that jolt?*

A. No.

Q. What is the next thing you recall happening?

A. Spinning. You know, going around.

Q. And then what?

A. And then falling, like a thump, like when I had hit the ground." (Tr. 7-8)

This testimony falls far short of establishing by the preponderance of the evidence that Claimant struck the pothole shown in Claimant's exhibits 2 through 6, thereby causing her to lose control of her car and go through the guardrail.

Claimant did not testify, for example, that she saw the pothole but could not avoid hitting it. No following motorist testified that he saw her car hit the pothole and then go out of control. She testified that she felt a jolt. This, standing by itself, does not establish that she hit the pothole shown in her exhibit. The pothole was 75 yards east of where she went through the guardrail, a considerable distance. Claimant's assertion is correct that simple arithmetic will demonstrate that a car traveling 50 miles per hour will travel 75 yards in less than five seconds. But the implication of the stipulated testimony of William D. Peters, Jr., is that she lost control at the point where she went through the guard-rail, not 75 yards east thereof. This does not imply that she went out of control 75 yards before going through the guardrail.

On cross-examination she reiterated her testimony that she felt a jolt, but acknowledged that during a discovery deposition she had made no reference to a jolt:

"Q. First of all I'm referring to page six. Is it not true that you were asked the following question and gave the following answers:

'Q. As you were coming west on Cermak Road from Broadview, can you tell us what occurred?

A. I was just driving.

Q. Just describe the incident for us.

A. I was driving and I remember hearing a screeching and waking up or coming to in the air. I guess I was already off the bridge.'

Q. Were you asked those questions and were those the answers you gave?

A. Yes.

Q. You didn't make any reference to feeling a jolt at that time, did you?

A. I guess not. Not if it's not there." (Tr. 35, 36)

This is more consistent with falling asleep at the wheel and waking up after she hit the guardrail than it is with hitting a pothole and going out of control.

"A. I was driving and I remember hearing a screeching and *waking up or coming to in the air.* I guess I was already off the bridge." (Tr. 35, 36) (Emphasis supplied.)

Earlier in cross-examination she testified that she was not certain that the car veered at the point she felt the jolt. (Tr. 24)

Richard Roderick, an officer of the Illinois State Police, testified that her right front tire had a worn spot where it had been worn down to the underlying cord of the tire.

While she was lying on the shoulder of I-294 he questioned her about the accident:

"A. * * * I asked her what had happened, what had caused the accident, what in her opinion had caused the accident, and she said she didn't know, she just lost control of the car.

Q. Did she ever make any reference to being jolted in the car prior to leaving the road?

A. No, she did not at that point in time." (Tr. 58, 59)

He testified that there was some standing water on the bridge deck. (Tr. 54) The standing water was due to vehicular traffic and it was a shallow pool that ran almost the entire length of the bridge deck, where vehicles had worn down the pavement into shallow ruts.

48

From all of the above it is possible to conjecture that Claimant hit a pothole and lost control of her car, or that she fell asleep at the wheel and woke up when she was already off the bridge, or that she skidded out of control on the wet pavement. Since the evidence falls short of proving how the accident occurred, it also falls short of proving any negligence on the part of Respondent with reference to causing the accident.

Claimant cites *Manos v. State*, 30 Ill. Ct. Cl. 639, as being on point. *Manos* would possibly be on point if Claimant had proved that she struck a pothole. In *Manos*, an eyewitness testified that "when decedent struck one of the chuckholes, his car went out of control and struck the utility pole * * *" This type of proof is absent from Claimant's case. In *Moldenthauer v. State*, 32 Ill. Ct. Cl. 514, also cited by Claimant, Claimant Moldenthauer testified that she struck a pothole, went off the road, came back and struck a second pothole.

Claimant has failed to meet her burden of proof.

It is therefore ordered that the claim be, and is hereby, dismissed with prejudice.