(No. 91-CC-0522–■■■■

RICHARD REED, Individually and as Administrator of the Decedents' Estates of PAMELA JO REED and JASON WESLEY REED, and as Guardian of the Estates of ANGELA REED and MARILYN REED, minors, and MARILYN KUYKENDALL and ROY KUYKENDALL, Claimants, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed July 19, 1999.*

COFFEY & GRIESBACH (MARY COFFEY, of counsel), for Claimants.

JIM E. RYAN, Attorney General (PHILLIP MCQUILLAN, Assistant Attorney General, of counsel), for Respondent.

## OPINION

RAUCCI, C.J.

### Introduction

The Claimants bring this action for compensatory damages pursuant to the Illinois Court of Claims Act, 705 ILCS 505/8. The Claimants assert that they were damaged by the negligent and reckless conduct of an Illinois State Trooper who failed to prevent an intoxicated person from driving an automobile which caused a car accident that resulted in the deaths of Pamela Jo Reed and her unborn son, Jason Wesley Reed, and injuries to Richard Reed, Angela Reed, Marilyn Reed, Marilyn Kuykendall, and Roy Kuykendall.

At approximately 2:25 p.m., on September 11, 1988, the Claimants were riding in a Chevrolet Suburban north on Illinois 130 in Jasper County when they were struck head-on by a vehicle driven by Larry Rice. His blood alcohol concentration about three hours after the accident was 0.131.

Pamela Reed died as a result of multiple injuries, including hemorrhage due to multiple traumatic lacerations of the inferior vena cava, the hilum of the left lung and the uterine blood vessels and walls; a fractured sternum; numerous rib fractures; multiple fractures of the right

humerus, right tibia, right fibula and pelvis; and a severe avulsion of the scalp. Jason Reed, Richard and Pamela's unborn son, died as a result of multiple lacerations of the uterine walls and blood vessels and the traumatic separation of the placenta from the uterus. Marilyn Reed, Richard and Pamela's 18-month-old daughter, suffered brain damage with post-traumatic encephalopathy and seizures, fractures of both femurs and a fractured mandible. Marilyn Kuykendall, Pamela Reed's mother, suffered fractures of the right arm, left ankle, pelvis, left leg, and internal injuries, including injuries to the bladder and bowel. Angela Reed, Richard and Pamela's seven-year-old daughter, suffered a hematoma on the back of her head and a laceration on her right leg. Roy Kuykendall, Marilyn Kuykendall's husband, suffered fractured ribs. Richard Reed suffered a fractured wrist.

Medical bills for Pamela Reed totaled $1,151.40. The funeral bill for Pamela and Jason Reed was $5,636.37. Marilyn Reed's medical bills totaled $60,224.18. Richard Reed's hospital bill was $1,332.75. Angela Reed's hospital bill was $573.40. Marilyn Kuykendall's medical bills totaled $190,983.60. Roy Kuykendall's hospital bill was $322.30.

Approximately two hours before the accident, Rice was a passenger in a vehicle driven by Kathy Irby, who was stopped by Illinois State Police Trooper Thomas Gardner and was arrested for driving under the influence of alcohol. When Gardner left the scene with Irby in his patrol car, he left Rice behind with the keys in the ignition of the car. Rice then drove the car away and caused the accident.

The Claimants contend the State was negligent by leaving Rice in Irby's car with the keys when Gardner

knew or should have known Rice was intoxicated, that he would drive the car and that when Rice drove the car, injury was likely to result.

A hearing was held before Commissioner Stephen R. Clark on August 26, 1997, at which testimony was heard from Rick Reed, Kathy Irby, Roy Kuykendall, Lorrie Crabtree, Jeannie Fritschle, Martinsville Police Chief Herman Davidson, Clark County Deputy James Bender and Trooper Thomas Gardner. In addition, the Commissioner admitted into evidence the deposition of Larry Rice, photographs of the accident scene, photographs of Marilyn Reed and Marilyn Kuykendall following the accident, the Claimants' medical records and bills, a police report regarding a traffic stop of Rice the day before the accident, State Police reports on the accident and Irby's arrest, reports from the Martinsville Police Department and Clark County Sheriffs Department regarding Irby's arrest, a written statement by Gardner given to State Police investigators, a statement from Elaine Jackson who reported seeing Rice shortly before the accident weaving on Illinois 130 as he was driving south, Rice's military identification, and portions of Gardner's discovery deposition. The State also submitted a departmental report. Both parties submitted briefs, and on February 9, 1999, the Court heard oral arguments.

### Issues

The disputed issues in this case are (1) whether Gardner had a duty to protect the Claimants from Rice's drunken driving; (2) whether that duty, if it existed, was breached; and (3) whether certain payments made to the Claimants should be deducted from any recovery as set-offs.

## The Evidence

The testimony and evidence show that Rice was, in fact, intoxicated at the time of Irby's arrest. Rice, Irby, Crabtree and Fritschle went to a concert near Effingham, where Rice drank a twelve-pack of beer in about 17 hours. The group then went to the Orchard Inn, where Rice drank three or four more beers in about one hour. After leaving the bar, Rice drove. Crabtree and Fritschle complained that Rice was driving erratically. They ended up getting out of the car and walking away. Rice admitted that it was obvious that he was too drunk to drive. Irby took over driving and was pulled over shortly thereafter driving 87 m.p.h. two miles west of Martinsville on U.S. 40. Rice appeared to be asleep in the back seat. He admitted that he was intoxicated at that time as well. Although Irby and Rice stated that they were not drinking in the car, there were two open beers in the front seat area and an opened bottle of whiskey in a cooler in the back seat area.

When Gardner stopped Irby's vehicle, he asked for identification from both Irby and Rice. Irby did not have a driver's license, and Rice produced a military identification card that was issued after his discharge. Gardner testified that he could not read all of the information on the card, so he asked Rice for further identification. Rice had a traffic ticket issued the previous day, but his driver's license had been taken for bond. Rice did not mention the ticket and "got mouthy" with Gardner, which caused Gardner to call for back-up officers to assist him, which Gardner testified that he does when someone at a traffic stop becomes uncooperative or agitated. Clark County Sheriff's Deputy James Bender and Martinsville Police Chief Herman Davidson responded to the call and assisted Gardner in keeping an eye on Rice and searching the vehicle. Gardner testified that he told Rice that he

would not be driving the car because he did not present a driver's license.

Irby, who appeared intoxicated, failed a field sobriety test, at which time Gardner arrested her and placed her in his patrol car. Irby's testimony revealed very little additional information about the incident. She stated that she was intoxicated and remembered little or nothing. Gardner testified that, after placing Irby under arrest, he talked to her about making arrangements for the removal of her car. He stated that the options were to have the vehicle towed, get permission from the driver to have another licensed driver at the scene take the vehicle, or allow the car to remain, if it did not pose a traffic hazard, while the driver made arrangements for its removal within a reasonable time. Gardner testified that, at first, Irby wanted the car towed, but then stated that she wanted to contact her sister and have her remove the car. Irby testified that she only remembered a discussion about towing the car and did not remember any discussion about her sister removing the car. By that time, Bender and Davidson had arrived. Davidson stood towards the right rear of the vehicle and watched Rice. Bender assisted Gardner in searching the car. Rice was allowed to stay in the vehicle while it was searched. Bender and Gardner removed the remaining alcohol from the car. They both testified that the interior of the vehicle smelled of alcohol but they did not attempt to determine whether the odor was coming from the car or from Rice. Gardner testified that he could have asked Rice to get out of the car to talk to him outside the car to determine if Rice had alcohol on his breath. Gardner also stated that he could have ticketed Rice for illegal transportation of alcohol because of his proximity to the opened whiskey bottle. Gardner said he could have arrested Rice if he still could not produce proper identification.

Davidson and Bender testified that Bender told Rice that if he drove, he could be arrested for driving under the influence of alcohol (DUI). Despite their testimony that they saw no signs that Rice was intoxicated, and despite Bender's testimony that he would not have arrested anyone for DUI based on what he saw or heard from Rice, there had to be some indication for Bender to give such a warning.

Gardner testified that he simply forgot to remove the car keys from the ignition before he left. He stated that either Bender or Davidson had reminded him to take the keys. However, Davidson testified that Gardner told him that he was leaving the keys at the scene because Irby's sister was going to pick up the car. Bender testified that he didn't remember any discussion about the keys and did not remember telling Gardner not to forget the keys. However, Gardner was much more candid about being reminded about, and forgetting, the keys.

## The Law

In order to recover against the State for negligence, the Claimant must prove by a preponderance of the evidence that the Respondent was negligent, that the negligence was the proximate cause of the Claimant's injuries, and damages. *Mackowiak v. State* (1982), 35 Ill. Ct. Cl. 315; *Moldenhauer v. State* (1978), 32 Ill. Ct. Cl. 514.

But first, the Claimant must establish that the State owed the Claimant a duty of care. (*Kurtz v. Wright Garage Corp.* (1994), 262 Ill. App. 3d 1103, 1107, 635 N.E.2d 897, 200 Ill. Dec. 558.) In general, the relevant factors to be considered by a court in determining the existence of a legal duty include (1) the reasonable foreseeability of injury, (2) the likelihood of injury, (3) the magnitude of guarding against the injury, and (4) the consequences of placing that burden upon the defendant. *Id.*

In *Anderson v. State* (1988), 40 Ill. Ct. Cl. 126, we considered the issue of whether a duty exists when a trooper allows an intoxicated person to drive and that person later injures other persons in a drunken driving accident. The Court granted the State's motion to dismiss for failure to state a cause of action because the Claimant failed to allege a duty on the part of the State. We stated:

"Traditionally, claims such as this fall under a rule of law sometimes known as the 'public duty' rule. This rule states that a police officer's duty to enforce the law is a duty owed to the public generally and not to individual persons; therefore, police officers and their employers are not liable to individuals injured even if an officer failed to do his or her duty. (*Mallder v. Rasmussen* (1986), 145 Ill. App. 3d 809, 495 N.E.2d 1356.) An exception to this rule exists where the police enter into a special relationship with a person who is subsequently injured (*Mallder, supra*), but no such relationship existed in this case."

We followed the 1987 Fourth District case of *Fessler v. R.E.J., Inc.* (1987), 161 Ill. App. 3d 290, 514 N.E.2d 515, 112 Ill. Dec. 852, in rejecting the application of section 319 of the Restatement of Torts 2d, which places a duty of reasonable care to control third persons that the defendant knows or reasonably should know to be likely to cause bodily harm to others. *Fessler* was another drunk driver case. The Court there examined the "public duty" doctrine which states that the duty of police to preserve a community's well-being and to prevent the commission of crimes is owed to the public at large, not to specific individuals. (*Fessler*, 161 Ill. App. 3d at 295.) An exception to this rule is where police have assumed a special relationship or are under a special duty to an individual which elevates his status beyond that of a member of the general public. The elements of this exception are:

"(1) the municipality must be uniquely aware of the particular danger or risk to which the plaintiff is exposed; (2) there must be allegations of specific acts or omissions on the part of the municipality; (3) the specific acts or omissions on the part of the municipal employees must be either affirmative or wilful in nature; and (4) the injury must occur while the plaintiff is under the direct and immediate control of employees or agents of the municipality." *Id.* at 296.

We are constrained by the law to deny this claim.

Because we find there is no liability on the part of Respondent, it is unnecessary to consider the .remaining issues.

It is therefore ordered, adjudged and decreed that these claims, and each of them, are dismissed and forever barred.