CINDY GAMMON, a Minor, by Audrey J. Gammon, her Mother and Next Friend, Plaintiff-Appellant, *v.* EDWARDSVILLE COMMUNITY UNIT SCHOOL DISTRICT NO. 7, Defendant-Appellee.

Fifth District   No. 79-433

Opinion filed March 26, 1980.

Chapman, Chapman & Carlson, of Granite City (Robert W. Bosslet, Jr., of counsel), for appellant.

Dunham, Boman & Leskera, of East St. Louis (Robert D. Francis, of counsel), for appellee.

Mr. JUSTICE HARRISON delivered the opinion of the court:

Plaintiff, Cindy Gammon, a minor, by her mother and next friend, Audrey Gammon, appeals from entry of a judgment *non obstante veredicto* on June 25, 1979, following a jury verdict in her favor in the circuit court of Madison County. The complaint sought compensation for injuries resulting from a battery inflicted upon Gammon by a classmate at Edwardsville Junior High School. Plaintiff contends that the evidence presented at trial was sufficient to sustain a jury verdict of wilful and wanton conduct by the defendant and that therefore the entry of judgment *n.o.v.* was erroneous. We reverse the judgment of the circuit court and remand the cause with instructions to enter judgment on the jury verdict.

Plaintiff Gammon, at the time of her injury in February 1977, was an eighth grade student at Edwardsville Junior High School. She was informed by telephone, by a classmate and friend, of threats made against her by another student while she was absent from school due to illness. Upon returning to school on the morning of Wednesday, February 9, the plaintiff became apprehensive about the situation when she was told that the threatening student, Vicki Ladd, wished to see her in a school rest room. Out of fear for her safety, Gammon avoided this proposed confrontation. Later that morning, being aware of Ladd's anger and feeling considerable trepidation, the plaintiff went to a guidance counselor employed by the school, Patrice M. Johannes, for help.

Johannes met with the plaintiff and sent for Ladd. The two aired their differences before Johannes at which time Ladd's considerable anger could be readily seen by the counselor. Gammon was excused from the room and waited outside the office while Johannes and Ladd talked about the matter. The appellee asserts that Ladd was informed that no fighting would be permitted in the school and that suspension would result if any occurred. The counselor testified that she and the offending student, with whom she had worked extensively in the past, had a good rapport. Yet, when Ladd left her office, Johannes was aware that she remained quite angry. Gammon was called back into the counselor's office and it was recommended that for the immediate future she avoid any encounter with Ladd. The plaintiff, however, continued to express her apprehension and indicated clearly she did not believe that her difficulties with Ladd were over. The counselor did not order Ladd to return to her office following lunch during a free period in which such an altercation might conceivably occur nor did she order Gammon to do so. No effort was made by her to notify disciplinary personnel, such as the assistant

principal, who was usually notified when there was the potential for such fighting. Neither were either of two playground supervisors apprised of the situation so that they might monitor the two pupils.

Plaintiff later proceeded to lunch in the school cafeteria during which time she received assurances from other classmates that Ladd no longer intended any aggressive action against her. She was thus persuaded it was safe to enter the schoolyard after the lunch period, where she came into contact with the Ladd girl, who struck the plaintiff in the left eye with her fist. A serious fracture resulted to the orbit which required surgery to correct.

The plaintiff contends that the school's response to a known threat of violence on school premises was inadequate under the circumstances. She argues the assailant was a known disciplinary problem and that steps should have been taken to guarantee that no altercation would occur; more particularly, that direct supervision of the plaintiff or the assailant was required, or in the alternative, that immediate steps should have been taken to sequester and discipline Ladd following the morning counseling session. She concludes that such inaction constitutes wilful and wanton conduct.

■■ Since the plaintiff has attacked the validity of the judgment *n.o.v.* entered by the circuit court, its validity must be examined according to the standards established for such post-trial disposition in the face of a jury determination. The leading case of *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill.2d 494, 229 N.E.2d 504, states that both directed verdicts and judgments *n.o.v.* are compelled "only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." 37 Ill.2d 494, 510.

■■ That evidence, presented by the record in the present case, is to be applied to the law which posits the duty of our public educational system to provide for the physical safety of its students. Such duty is prescribed by the legislature in sections 24—24 and 34—84a of the School Code (Ill. Rev. Stat. 1977, ch. 122, pars. 24—24 and 34—84a), which place with the school and its agents the responsibility of maintaining discipline among pupils:

> "Teachers and other certificated educational employees shall maintain discipline in the schools, including school grounds which are owned or leased by the board and used for school purposes and activities. In all matters relating to the discipline in and conduct of the schools and the school children, they stand in the relation of parents and guardians of the pupils. This relationship shall extend to all activities connected with the school program and may be exercised at any time for the safety and supervision of the

pupils in the absence of their parents or guardians." (Ill. Rev. Stat. 1977, ch. 122, par. 24—24.)[1]

In meeting that responsibility teachers and school officials stand in the same position as do parents and guardians. It follows that a breach of the duty imposed requires more than common negligence. Wilful and wanton conduct is required to be shown. *Thomas v. Chicago Board of Education* (1979), 77 Ill.2d 165, 171, 395 N.E.2d 538; *Kobylanski v. Chicago Board of Education* (1976), 63 Ill.2d 165, 173, 347 N.E.2d 705. See also Gardner, *Changing Patterns in Illinois' School Tort Immunity*, 55 Chi.-Kent L. Rev. 605, 612 (1979).

Whether the evidence presents conduct of a wilful and wanton nature is a question of fact to be left for the jury's determination. (*See Biedron v. Quincannon* (1970), 126 Ill. App. 2d 283, 286, 262 N.E.2d 71.) From the perspective which the rule of *Pedrick* requires us to view the record, the determinative question is whether a verdict finding wilful and wanton conduct on the part of school personnel could not stand. Here, viewing all of the evidence presented, we cannot say that imposition of the judgment *n.o.v.* was proper.

■ As was pointed out by Justice Charles Jones of the Fifth District Appellate Court in *Landers v. School District No. 203* (1978), 66 Ill. App. 3d 78, 82, 383 N.E.2d 645, wherein a student was injured during a physical education class, wilful and wanton conduct is defined in the following terms:

"The Illinois authorities have consistently held that wilful and wanton misconduct requires an act

'* * * committed under circumstances exhibiting reckless disregard for the safety of others, *such as failure, after knowledge of impending danger, to exercise ordinary care to prevent it* or a failure to discover the danger through recklessness, or carelessness when it could have been discovered by the exercise of ordinary care.' (*Hocking v. Rehnquist* (1969), 44 Ill.2d 196, 201, 254 N.E.2d 515, 518; see also *Montague v. School Board of the Thornton Fractional Township North High School District 215* (1978), 57 Ill. App. 3d 828, 373 N.E.2d 719; *McRoberts v. Maxwell* (1976), 40 Ill. App. 3d 766, 353 N.E.2d 159.)" (Emphasis added.)

■ There was ample proof that the risk of harm was brought to the attention of Johannes and that supervision necessary to maintain discipline aimed at avoiding a confrontation between these pupils was not provided. Instead, the two were allowed to proceed to a situation where serious injury resulted. Johannes was well aware of the offending student's prior conduct and there was evidence that school officials knew of prior

---

[1] Same language is contained in section 34—84a.

fighting on her part. Yet after speaking with Gammon, Johannes placed the plaintiff, in essence, back in the position she had been in prior to going to her office for help. We note that in the regular schedule of student activities relatively little time was available for such a confrontation to occur. We cannot say that evidence was not presented which would enable the mind of the jury to determine that adequate steps were not taken; steps that could have been taken where impending danger had been brought to the attention of those vested with the duty to maintain discipline. We cannot say that such conduct does not demonstrate an utter indifference to or conscious disregard for the safety of the plaintiff.

Accordingly, we reverse the judgment of the circuit court of Madison County and remand the cause with instructions to enter judgment on the jury verdict.

Reversed and remanded with instructions.

SPOMER and KASSERMAN, JJ., concur.