LILLIAN BURRGESS KOSROW, Personal Adm'r of the Estate of Mary Ann Hoffman, Deceased, *et al.*, Plaintiffs-Appellants, v. ROBERT W. SMITH, Defendant-Appellee (Ronald S. Acker *et al.*, Defendants).

Second District No. 2—87—0488

Opinion filed October 19, 1987.

Robert J. Long and Marcia Korducki Long, both of Antioch, and Mark B. Belokon, of Waukegan, for appellants Lillian Burrgess Kosrow, Lawrence Hoffman and Julie Ann Hoffman.

Richard D. Heytow and Peter Alfieri, both of Crystal & Heytow, of Chicago, for appellant Carl E. Robinson.

Robin R. Lunn and Robert J. Shuckit, both of Keck, Mahin & Cate, of Chicago, for appellant Richard J. Byrne.

Myron J. Hall, Ltd., of Waukegan, for appellee.

JUSTICE UNVERZAGT delivered the opinion of the court:
Plaintiffs brought suit against defendants for money damages for the deaths of three women who died as a result of an automobile collision with defendant Ronald S. Acker. Defendant Robert Smith filed a motion to dismiss the three counts of the complaint which were directed against him. The trial court granted his motion to dismiss with prejudice, and plaintiff appealed pursuant to Supreme Court Rule 304(a) (107 Ill. 2d R. 304(a)).

Plaintiffs originally filed a complaint in which two counts, counts X and XI, were directed against Robert Smith. On February 27, 1987, counts X and XI were dismissed for their failure to state a cause of action. On March 20, 1987, plaintiffs filed an amended complaint. Count IX of that complaint alleged that: defendant Robert Smith had actual knowledge of defendant Acker's propensity to become intoxicated; defendant Robert Smith knew that Acker's driving license had

been suspended or revoked by the State of Illinois by reason of Acker's conviction for driving under the influence; that defendant Robert Smith knew that Acker had taken and used one or more motor vehicles owned and possessed by defendant Robert Smith or members of his immediate family during the period of time for which Acker's license had been suspended or revoked; that defendant Robert Smith had given his son, Jeffrey Smith, a 1974 Cadillac, and Robert Smith had the ability to control his son's actions in the use, entrustment, and control of the vehicle; and defendant Robert Smith had the duty to manage and control his home and household in such a manner as to prevent Acker from obtaining access to the use of any of the family cars, including that of the Cadillac owned by Robert Smith's son, Jeffrey, who still resided at home. The complaint alleged that defendant Acker resided with the Smith family, and count IX premised defendant Robert Smith's liability on his failure to prohibit Acker from using the vehicle possessed by Jeffrey Smith; his failure to set proper guidelines for his family as to defendant's access to the motor vehicles; his failure to prevent Acker's access to the keys of Jeffrey's car; his failure to warn members of the household of Acker's propensity to drive while intoxicated; and his failure to supervise Jeffrey's actions so that Acker would not obtain access to Jeffrey's vehicle. As a result of these acts and omissions, plaintiff alleged that Acker drove Jeffrey Smith's automobile while intoxicated, and he drove the car in a manner so as to cause a head-on collision with a car driven by Beverly Robinson, in which Mary Ann Hoffman and Colleen R. Byrne were passengers, thereby causing their deaths.

Count X of the complaint alleged that defendant Robert Smith voluntarily undertook a duty to prevent defendant's access to the use of vehicles owned by members of the Smith household. This count was premised on the same negligent omissions and acts of Smith in regard to his alleged voluntary duty. Count XI was premised on the same facts, but liability was alleged as a family expense. See Ill. Rev. Stat. 1985, ch. 40, par. 1015.

Defendant Robert Smith moved to dismiss the three counts of the complaint which were directed against him on the basis that they failed to state a cause of action. The trial court granted the motion to dismiss with prejudice. In denying plaintiffs' motion to reconsider, the trial court issued a memorandum opinion stating that defendant Robert Smith had no duty to control the actions of Acker, who was not Smith's son and who was characterized as a "house guest" in the complaint. The trial court entered an order of dismissal and found no just reason for delay of enforcement or appeal. This appeal followed.

Plaintiffs argue that since facts were alleged in the complaint that defendant Robert Smith knew of Acker's prior acts of driving under the influence, Robert Smith's failure to prevent Acker from obtaining access to Jeffrey Smith's car amounted to negligence. We do not agree.

■■ ■ To state a cause of action for negligence, plaintiffs' allegations must establish the existence of a duty of care owed by defendant to plaintiffs, a breach of that duty, and an injury proximately resulting from that breach. On a motion to dismiss, all well-pleaded facts within the complaint must be regarded as admitted and true, and all reasonable inferences which can fairly be drawn from the facts alleged must also be considered as true. A dismissal of a complaint for failure to state a cause of action should be affirmed on appeal only when no set of facts can be proved under the pleadings which would entitle plaintiff to relief. *Duncan v. Rzonca* (1985), 133 Ill. App. 3d 184, 190-91.

We note at the outset that Ronald Acker was identified as being Robert Smith's brother-in-law, and that Acker was living in Smith's house at the time of the collision. Jeffrey Smith, the person who owned the car used by Acker, was Robert Smith's 16-year-old son. Count IX of the complaint is premised on a theory that Robert Smith had a duty to control both his son and his son's automobile so that Ronald Acker would not have access to the automobile. Plaintiff has not cited any cases, nor have we found any, which suggest that a father has a duty to control a vehicle owned by his son. Plaintiff cites the case of *Giers v. Anten* (1978), 68 Ill. App. 3d 535, 538-39, for the proposition that liability may arise from the entrustment of an automobile to one who is known by the owner to be incompetent or reckless in his driving. However, here, as pleaded in plaintiffs' complaint, Jeffrey Smith, not Robert Smith, owned the vehicle. There is no allegation that Robert Smith had any ownership interest in the vehicle at the time of the fatal accident. Thus, the fact that Ronald Acker used Jeffrey Smith's automobile would mean that any liability on the part of Robert Smith for the entrustment of the automobile by Jeffrey Smith would have to derive from Robert Smith's duty to control his son's behavior.

■■ We turn, then, to the question of whether Robert Smith had a duty to control his son Jeffrey, so that Jeffrey did not make his keys available to Ronald Acker. We conclude that Robert Smith had no duty to control Jeffrey's actions in such a manner as to preclude Ronald Acker from obtaining control of Jeffrey's car. The general rule in Illinois is that parents are not liable for the torts of their minor

child merely because of the parent-child relationship. An exception to that rule is set forth in the Restatement (Second) of Torts sec. 316 (1965). That section provides that a parent is under a duty to exercise reasonable care to control his minor child to prevent him or her from intentionally harming others or from conducting himself or herself as to create an unreasonable risk of bodily harm to the public if the parent knows or has reason to know that he can control his child, and the parent knows or should know of the necessity and the opportunity for exercising such control. In order to hold the parent liable for a child's acts, a complaint must allege specific instances of prior conduct sufficient to put the parents on notice that the act complained of was likely to occur. (*Campbell v. Haiges* (1987), 152 Ill. App. 3d 246, 250.) Therefore, in order to hold Robert Smith liable for Jeffrey's actions or inactions, there would have to be facts alleged that Robert Smith knew of or should have known of the necessity and opportunity to exercise control over Jeffrey.

In *Duncan v. Rzonca* (1985), 133 Ill. App. 3d 184, 201, the court reversed the dismissal of a complaint against a mother, holding that she could be liable for the acts of her minor son where she had knowledge of a prior incident in which he had performed the same act of pushing a bank alarm button, and she had the opportunity to prevent a repetition of that act. Conversely, in *Campbell v. Haiges* (1987), 152 Ill. App. 3d 246, 250-51, this court held that where only bare, conclusional allegations of a child's special education problems and tendency for extreme violence were made, the trial court properly granted summary judgment for the defendant, whose minor child had attacked plaintiff's child. Similarly, in *Williams v. McCoy* (1987), 152 Ill. App. 3d 912, 915, summary judgment for defendant was affirmed because the defendant baby-sitter, while acting *in loco parentis,* had no notice or knowledge of any previous similar acts committed by the child under her care. The baby-sitter could not then be held liable for the child's act of shooting another child.

Finally, in *Pesek v. Discepolo* (1985), 130 Ill. App. 3d 785, the defendants' son assaulted and raped plaintiff. Although defendants had knowledge of their son's propensities toward truancy, association with juvenile delinquents, and commission of criminal or quasi-criminal acts, as well as a propensity towards intoxication, there was no evidence of any prior acts of violence which would have put them on notice that he was likely to commit such a violent and brutal act. The court upheld a dismissal of the complaint for failure to state a cause of action. 130 Ill. App. 3d 785, 787. See also *Cooper v. Meyer* (1977), 50 Ill. App. 3d 69, 72 (where plaintiff was attacked by defendant's mi-

nor child, the complaint did not state a cause of action because it did not allege that defendant had knowledge that plaintiff would visit and that defendant had knowledge that there was a necessity to exercise control).

The relevant facts pleaded in the complaint in this case were that Ronald Acker had driven while under the influence on prior occasions and that Ronald Acker had taken family vehicles without permission on prior occasions. There were no facts pleaded regarding any actions or inactions by Jeffrey Smith which allowed Acker to obtain the use of the vehicle on prior occasions. In fact, it is not clear that Acker used Jeffrey's car on these alleged prior occasions. Certainly in the absence of such facts, there can be no ascertainment that Robert Smith knew of the necessity for exercising control over his son Jeffrey. Therefore, Robert Smith could not be liable for any wrongful act or omission by his son in exercising control over the keys to the automobile.

Plaintiffs also contend that in count X they pleaded a voluntary undertaking of duty by Robert Smith to keep Ronald Acker from driving while intoxicated, and the trial court erred in dismissing that count of the complaint. Plaintiffs argue that by Robert Smith's act of voluntarily sheltering Acker, a person known to drive while under the influence, Smith undertook a duty to protect the public from Acker's use of the vehicles which were housed on his premises.

The general principle of duty to control the conduct of a third person to prevent him from doing harm to another is that no duty exists unless a special relation exists between the actor and the third person or between the actor and the other which gives the other a right to protection. (Restatement (Second) of Torts sec. 315 (1965).) Plaintiffs argue that the facts pleaded showed a special relation between Robert Smith and Ronald Acker, that special relation being that Robert Smith voluntarily housed Ronald Acker even though he was aware of Acker's dangerous propensity.

We cannot agree that with the undertaking of giving Acker shelter, Robert Smith voluntarily assumed a duty to the public to protect them from Acker's driving while in the state of intoxication. There are no factual allegations pleaded that Smith was acting *in loco parentis* or that he had control over Acker's general conduct because of a special relation. While there may be a duty to exercise reasonable care to control a third person to prevent him from doing harm to others if one takes charge of a third person whom he knows or should know is likely to cause bodily harm to others (Restatement (Second) of Torts sec. 319 (1965)), here there were no allegations that Robert

Smith took charge of Acker. At most, Smith voluntarily gave shelter to Acker. This relationship does not raise a recognized duty in Illinois to protect the public from acts by Acker.

For the foregoing reasons, we affirm the judgment of the circuit court of Lake County.

Affirmed.

DUNN and WOODWARD, JJ., concur.