RUSSELL KURTZ, Plaintiff-Appellant, v. WRIGHT GARAGE CORPORATION, Defendant-Appellee.

First District (6th Division)   No. 1—93—0225

Opinion filed May 20, 1994.

James Paul Costello, Ltd., of Chicago (James P. Costello, of counsel), for appellant.

Jerome G. McSherry & Associates, of Chicago (Maurice E. Dusky, of counsel), for appellee.

JUSTICE GIANNIS delivered the opinion of the court:

This is a personal injury action brought by a gasoline truck driver against a corporation that had contracted with his employer to inspect and make repairs to the gasoline truck. While at work and while descending the truck's ladder, plaintiff, Russell Kurtz, fell from a step just below the truck's bumper. Plaintiff's complaint alleged that the defendant's failure to maintain the bottom step of the ladder and failure to tighten the bolts which secured the step in place proximately caused his injury. The trial court granted defendant's motion for summary judgment. We have jurisdiction under Supreme Court Rules 301 and 304 (134 Ill. 2d Rules 301, 304).

Plaintiff's employer at the time of his injury was E.J. Meyers. As part of plaintiff's duties for E.J. Meyers, plaintiff was required to inspect his truck before the start of each work day. In the course of inspecting the truck, plaintiff climbed to the top of the vehicle by using a ladder which had been permanently attached to the back of the truck. On June 18, 1990, plaintiff was injured while descending this ladder.

In plaintiff's deposition he testified that before he fell he did not notice the bottom step to be out of its normal position. He stated that he ascended the ladder without incident. When he came down the ladder, however, he testified he missed the bottom step and fell to the ground. He stated that the bottom step was loose and had swung

beneath the bumper. Plaintiff reported the problem with the step to Jerry Reed, one of defendant's employees. Reed promptly tightened the bolts which held the bottom step of the ladder in place and plaintiff continued with his gasoline deliveries. Later that day, however, plaintiff experienced pain in his leg. He called his supervisor from one of the gas stations where he was making a delivery. Plaintiff subsequently underwent surgery related to the fall and missed several months of work.

In his deposition Jerry Reed stated that he worked for the defendant as a night shift foreman and truck mechanic. He stated that defendant did the repairs on E.J. Meyers' equipment, as well as on other companies' equipment. He testified that defendant performed bimonthly inspections and repairs on the trailers owned by E.J. Meyers. He indicated that minor repairs were made at the time of the inspection but that other repairs were done pursuant only to a written document called a vehicle inspection report or "VCR." These forms were filled out by E.J. Meyers' drivers at the end of their shifts and detailed any problems the drivers might have encountered with the trucks. They were then approved by E.J. Meyers personnel and forwarded to the defendant. Reed stated that he generally worked from the VCR forms but that drivers would occasionally bring in trucks directly to him when they noticed minor problems with their vehicles. He said that he could not recall how often he had performed similar repairs on loose bottom steps for E.J. Meyers' drivers, but admitted that he had tightened the screws on several of defendant's vehicles when asked to do so by the drivers.

Donald Tallman's deposition was also taken during discovery. He testified that he drove the same truck that plaintiff had driven and that he occasionally noticed that the bottom step of the ladder was not attached firmly to the vehicle. Indeed, Tallman stated that the bottom rung of the ladder would sometimes swing freely. He said that he reported the step on several occasions in a written VCR. He indicated that he believed defendant's mechanics did not believe repairs to the step were very important and that he had taken his truck out on occasion with a loose step, although he admitted that he could have refused to do so. He testified that he did not have authority to order the mechanics to do repair work but that the defendant's mechanics would often make repairs when they were asked.

William Annunziata was also deposed during discovery. He testified that he drove trucks for E.J. Meyers and that two of the trucks, the trucks numbered 100 and 102, had loose steps at the bottom of their ladders. He stated that he knew plaintiff regularly

drove truck number 100. He indicated that when the bolts on the step became loose he took the vehicles to defendant's garage and defendant's mechanics would tighten the bolts. He also stated that he reported the loose steps on several occasions to his dispatcher, who worked for E.J. Meyers. He said that the drivers would often first report problems to defendant's mechanics and, if they did not resolve the problem, then report the work to the dispatchers.

Thomas Dillard also worked as a truck driver for E.J. Meyers. He testified in his deposition that the last step on the ladder was not really part of the main ladder but was a step that had been added below the bumper. He indicated that this step was fastened with a single bolt on each side and that the bolts would come loose. He said that if the step had been welded or fastened with a pair of bolts on each side the step would not have been able to swing freely. He said that most of the drivers would simply take the truck to the garage and have the bolts tightened. Dillard stated that E.J. Meyers was just a trucking company and did not do its own repair work on the trucks. He also said that the bottom step did not appear to have been installed by the factory that produced the truck. This led him to believe that the step had been designed and installed by the defendant.

The trial court granted defendant's motion for summary judgment. Such a motion is properly granted when the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. (735 ILCS 5/2—1005 (West 1992); *Addison v. Whittenberg* (1988), 124 Ill. 2d 287, 294, 529 N.E.2d 552.) An order allowing summary judgment will be reversed on appeal if the reviewing court determines that a genuine issue of material fact exists. (*Addison*, 124 Ill. 2d at 294.) Review in the appellate court of a grant of summary judgment is *de novo. Outboard Marine Corp. v. Liberty Mutual Insurance Co.* (1992), 154 Ill. 2d 90, 102, 607 N.E.2d 1204.

Plaintiff argues that the trial court improperly granted summary judgment because the facts of this case create a material question of fact as to whether defendant had a duty to maintain the bottom step of the ladder by adding bolts or by welding the bottom step into place, rather than simply tightening the bolts. One of the witnesses indicated that this would have permanently prevented the step from becoming loose and swinging freely. Defendant responds by arguing that it had no duty to repair the step in such a way until it received a written report from E.J. Meyers' dispatchers authorizing such a repair.

In order to recover in a negligence action, a plaintiff must establish that defendant owed plaintiff a duty of care, that defendant breached that duty, and that plaintiff's injury proximately resulted from such breach. (*Rowe v. State Bank of Lombard* (1988), 125 Ill. 2d 203, 531 N.E.2d 1358.) Although the issues of breach of duty and proximate cause are factual matters, the question of the existence of a duty is one of law. (*Curtis v. County of Cook* (1983), 98 Ill. 2d 158, 456 N.E.2d 116.) In determining whether a duty exists, the trial court must consider whether a relationship existed between the parties which imposed a legal obligation upon one party for the other's benefit. (*Rowe*, 125 Ill. 2d at 215.) Duty is defined as "a legal obligation to conform one's conduct to a certain standard for the benefit or protection of another." *Rabel v. Illinois Wesleyan University* (1987), 161 Ill. App. 3d 348, 356, 514 N.E.2d 552; *Duncan v. Rzonca* (1985), 133 Ill. App. 3d 184, 478 N.E.2d 603.

■ The relevant factors to be considered by a court in determining the existence of a legal duty include (1) the reasonable foreseeability of injury, (2) the likelihood of injury, (3) the magnitude of guarding against the injury, and (4) the consequences of placing that burden upon the defendant. (*Benner v. Bell* (1992), 236 Ill. App. 3d 761, 764-65, 602 N.E.2d 896.) A duty sufficient to support liability in tort can arise from a contractual obligation undertaken by the defendant. See, *e.g.*, *Schoondyke v. Heil, Heil, Smart & Golee, Inc.* (1980), 89 Ill. App. 3d 640, 411 N.E.2d 1168 (condominium association undertook duty toward nonowner by agreeing to provide snow removal for association complex).

■ In applying the appropriate factors, we decline to impose the duty upon defendant suggested by the plaintiff. The parties agree that there was some form of arrangement between E.J. Meyers and the defendant by which defendant would inspect E.J. Meyers' trucks and make minor repairs. In addition, defendant's employees would make minor repairs to the trucks whenever requested to do so by the drivers. Jerry Reed, defendant's mechanic, testified that he tightened bolts similar to the ones supporting the step from which defendant fell whenever he was requested to do so. Plaintiff argues, however, that this type of repair was insufficient because defendant owed it a duty to more permanently secure the step.

Plaintiff has not alleged that defendant was responsible for the design of the step and we do not believe defendant owed a duty to plaintiff to redesign it. As the mechanic for the trucks, defendant's obligations were to report problems with the vehicles to E.J. Meyers and to make *authorized* repairs. There is nothing in the record to indicate that defendant ever received authorization to weld the step

or to add additional bolts to the frame of the truck as plaintiff has suggested, even though there is ample evidence that E.J. Meyers had been put on notice of the problem with the step. We also note that there is nothing in the record to indicate that defendant ever failed to tighten the bolts when an inspection indicated that they had come loose or when asked to do so by one of the drivers.

Plaintiff's reliance on *Buford v. Chicago Housing Authority* (1985), 131 Ill. App. 3d 235, 476 N.E.2d 427, is misplaced. In *Buford*, the issue was not whether defendant owed plaintiff a legal duty, but rather, the factual question of whether there was sufficient evidence to support the jury's verdict that defendant had breached its duty to the plaintiff. Even so, the facts of *Buford*, which involved the maintenance of an elevator in a residential high rise building in which children were present, implicates a very different set of policy considerations than those which are involved here.

For the foregoing reasons, the judgment of the circuit court granting defendant summary judgment is affirmed.

Affirmed.

McNAMARA and RAKOWSKI, JJ., concur.