650 N.E.2d 585 (1995)
272 Ill.App.3d 629
208 Ill.Dec. 891
Robert GEIMER, Plaintiff-Appellee,
v.
CHICAGO PARK DISTRICT, Defendant-Appellant.
No. 1-93-1279.
Appellate Court of Illinois, First District, Fifth Division.
May 5, 1995.
*587 Chicago Park Dist. (Nelson A. Brown, Jr., of counsel), for appellant.
Michael W. Rathsack, Chicago, for appellee.
Presiding Justice COUSINS delivered the opinion of the court:
Plaintiff, Robert Geimer, sued the defendant, Chicago Park District, for injuries resulting from a game of touch football. Plaintiff claimed that defendant's referees acted wilfully and wantonly when they failed to expel an opponent from the game for his rough play before he injured the plaintiff. A jury found for the plaintiff and awarded damages of $100,000. Defendant filed a post-trial motion pursuant to section 2-1202 of the Illinois Code of Civil Procedure (735 ILCS 5/2-1202 (West 1992)), requesting judgment notwithstanding the verdict or a new trial. The trial court denied the motion, from which defendant appeals. Defendant contends: (1) the referees did not have a common law duty or a "special duty" to protect the plaintiff from rough play or intentional misconduct during a sporting event; (2) the evidence failed to support a claim that the referees acted wilfully and wantonly; (3) section 3-108(a) of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/3-108 (West 1992)) immunizes the park district for failure to supervise any activity on public property; (4) the undisputed evidence established that the referees were independent contractors; and (5) the trial court abused its discretion when it did not order a new trial based upon errors committed during the trial.
We reverse and remand.
In the autumn of 1984, plaintiff joined a touch football league operated by the defendant. The league supervisor, John Long, wrote the play and officiating rules and revised them for the league every year. Mr. Long hired John Hodel to manage and select the league's referees. The rules of the league called for penalties and immediate ejection from the game for fighting or unnecessary roughness.
On the night of October 15, 1984, plaintiff was playing in a touch football league game at one of defendant's parks. The game was refereed by two officials. During the game, the plaintiff and his teammates complained about the conduct of an opposing player identified as "Tony." On the first play of the game, Tony punched the plaintiff in the rib cage. He complained about Tony to the nearest referee, and the referee said he would watch him. The next play Tony hit the plaintiff with his arms extended, and the plaintiff again complained to the referee. On a later play where a pass landed in front of the plaintiff, Tony shoved the plaintiff and landed on top of him. Plaintiff's teammates complained to the referees after this play. On another play, Tony struck one of plaintiff's teammates and knocked him to the ground. Plaintiff's teammate then screamed at Tony, Tony shoved the teammate, the teammate shoved back, and then Tony threw a wild swing which missed. At this point, the referees and other players grabbed and separated the men. On another play, plaintiff *588 was dragged to the ground by Tony after catching a pass. Several penalties were called against Tony, but he was not thrown out of the game. In the second half of the game, six similar incidents took place, including pushing, shoving, elbowing, tackling, and placing a forearm shiver.
Plaintiff's injuries occurred on the first play in overtime. A pass was thrown to plaintiff but went over his head. The ball then hit the ground and rolled, the whistle blew, and plaintiff stopped at the sideline. At this point, Tony hit the plaintiff directly from behind, threw him to the ground, and landed directly on top of him with the full force of his body weight. One of plaintiff's teammates described Tony's actions as coming up with his fists and arms into the plaintiff after the play was over, even though there was no contact other than hands for tagging purposes. The teammate said it was not a tag at all, but was basically a hit, a tackle, and a blatant cheap shot. From this tackle, plaintiff sustained a serious shoulder injury which required surgery.
Plaintiff filed a complaint alleging that the defendant's agents, the referees, wilfully and wantonly caused plaintiff's injuries either by failing to prevent Tony from committing acts of violence by failing to enforce the rules and regulations of the game, or by failing to expel Tony from the game by reason of violations of rules and regulations of the game.
Defendant's motion for summary judgment was denied, and a jury trial on the complaint began on August 25, 1992. Defendant's motion for a directed verdict was denied, and the trial was declared a mistrial on September 2, 1992, because of a deadlocked jury. The second trial began on January 6, 1993, and defendant's motion for a directed verdict was again denied. On January 8, 1993, the jury found for the plaintiff and awarded damages of $100,000 against the defendant. The jury also affirmatively answered two special interrogatories, agreeing that the referees were agents of the defendant and that the defendant had committed wilful and wanton conduct during the game in which plaintiff was injured. The trial court denied the defendant's post-trial motion for judgment not-withstanding the verdict (judgment n.o.v.), from which defendant now appeals.

I
Examining the defendant's first contention, we conclude that the defendant did not have a duty to prevent the intentional misconduct by a third party which harmed the plaintiff. The determination of whether a duty exists is a question of law for this court to decide. (Bialek v. Moraine Valley Community College School District 524 (1994), 267 Ill.App.3d 857, 860, 204 Ill.Dec. 924, 642 N.E.2d 825; Kirk v. Michael Reese Hospital & Medical Center (1987), 117 Ill.2d 507, 525, 111 Ill.Dec. 944, 513 N.E.2d 387.) In determining whether a duty exists, a court must consider whether a relationship existed between the parties which imposed a legal obligation upon one party for the other's benefit. (Kurtz v. Wright Garage Corp. (1994), 262 Ill.App.3d 1103, 1107, 200 Ill.Dec. 558, 635 N.E.2d 897; Rowe v. State Bank (1988), 125 Ill.2d 203, 215, 126 Ill.Dec. 519, 531 N.E.2d 1358.) For a particular case, a court must weigh the foreseeability and likelihood of injury against the burden to defendant of imposing a duty and the consequences of imposing this burden. (Kurtz, 262 Ill.App.3d at 1107, 200 Ill.Dec. 558, 635 N.E.2d 897; Ziemba v. Mierzwa (1991), 142 Ill.2d 42, 47, 153 Ill.Dec. 259, 566 N.E.2d 1365.) A plaintiff cannot recover for either ordinary negligence or wilful and wanton misconduct unless the defendant has breached a duty owed to the plaintiff. (Bialek, 267 Ill.App.3d at 860, 204 Ill.Dec. 924, 642 N.E.2d 825; Helms v. Chicago Park District (1994), 258 Ill.App.3d 675, 679, 196 Ill.Dec. 851, 630 N.E.2d 1016.) When there is no duty owed to the plaintiff, the defendant is entitled to judgment. Helms, 258 Ill.App.3d at 679, 196 Ill.Dec. 851, 630 N.E.2d 1016.
Illinois courts have generally upheld the common law principle that municipalities are not liable in tort and owe no duty to individual members of the general public for failure to prevent the tortious or unlawful acts of others. (Thames v. Board of Education (1994), 269 Ill.App.3d 210, 206 Ill.Dec. 440, 645 N.E.2d 445.) In general, one has no duty to control the conduct of another to *589 prevent him from causing harm to a third party. (Ventura v. Picicci (1992), 227 Ill. App.3d 865, 867, 169 Ill.Dec. 881, 592 N.E.2d 368; Estate of Johnson v. Condell Memorial Hospital (1988), 119 Ill.2d 496, 503, 117 Ill. Dec. 47, 520 N.E.2d 37; Restatement (Second) of Torts § 315 (1965).) One exception to this rule occurs when the defendant and wrongdoer have a "special relationship" as described in sections 316 through 319 of the Restatement: parent-minor child, master-servant, possessor of land-licensee, and a person who takes charge of another with dangerous propensities. (Ventura, 227 Ill. App.3d at 867, 169 Ill.Dec. 881, 592 N.E.2d 368; Johnson, 119 Ill.2d at 503, 117 Ill.Dec. 47, 520 N.E.2d 37.) An exception to the rule also occurs when the defendant and the injured party have a "special relationship": common carrier and passenger, innkeeper and guest, business invitor and invitee, and voluntary custodian and protectee. (Hernandez v. Rapid Bus Co. (1994), 267 Ill. App.3d 519, 524, 204 Ill.Dec. 456, 641 N.E.2d 886; B.C. v. J.C. Penney Co. (1990), 205 Ill.App.3d 5, 9, 150 Ill.Dec. 3, 562 N.E.2d 533; Restatement (Second) of Torts §§ 314A, 315, Comment (1965).) The foreseeability of intentional misconduct by a third party does not itself create any duty without a special relationship. B.C., 205 Ill.App.3d at 10, 150 Ill.Dec. 3, 562 N.E.2d 533; Rowe, 125 Ill.2d at 216, 126 Ill.Dec. 519, 531 N.E.2d 1358.
A possible special relationship to apply in the instant case would be the "dangerous propensities" provision of section 319, which provides:

"One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm." (Emphasis added.) (Restatement (Second) of Torts § 319 (1965).)
The Restatement illustrates this section with examples of a private hospital for contagious diseases and a private sanitarium for the insane. (Restatement (Second) of Torts § 319, Comment (1965).) Examples of where section 319 did not apply, because the defendant had not "taken charge" of the perpetrator, include a mother who let her adult criminal son live with her (Ventura, 227 Ill.App.3d at 868, 169 Ill.Dec. 881, 592 N.E.2d 368), and a host with an intoxicated houseguest (Kosrow v. Smith (1987), 162 Ill.App.3d 120, 125-26, 113 Ill.Dec. 104, 514 N.E.2d 1016; Heldt v. Brei (1983), 118 Ill.App.3d 798, 74 Ill.Dec. 413, 455 N.E.2d 842). We find the referees in the instant case much more similar to the Kosrow homeowners dealing with the intoxicated houseguest as opposed to the Restatement's insane asylum example. We hold that section 319 does not apply to give the defendant a duty.
We also do not believe a special relationship through the defendant's land ownership would be appropriate under Illinois law. This court has stated, "The basis for the inviter's liability for injuries sustained by the invitee on the premises rests on the owner's superior knowledge of the danger." (Popp v. Cash Station, Inc. (1992), 244 Ill.App.3d 87, 94, 184 Ill.Dec. 558, 613 N.E.2d 1150.) Popp held that there was no duty to prevent attacks by third parties, even when foreseeable, if the defendant had no unique knowledge regarding possible future attacks. (Popp, 244 Ill.App.3d at 95-96, 184 Ill.Dec. 558, 613 N.E.2d 1150.) In the instant case, the plaintiff had greater forewarning of the misconduct than the defendant. The Illinois Supreme Court has repeatedly stated that, even when injury is reasonably foreseeable, the "imposition of a general duty to anticipate and guard against the negligence of others would place an intolerable burden on society." (Ziemba, 142 Ill.2d at 52, 153 Ill. Dec. 259, 566 N.E.2d 1365; Dunn v. Baltimore & Ohio R.R. Co. (1989), 127 Ill.2d 350, 366, 130 Ill.Dec. 409, 537 N.E.2d 738.) Such a duty is a considerably higher burden than guarding against dangers created solely by conditions on the landowner's property. (Ziemba, 142 Ill.2d at 53, 153 Ill.Dec. 259, 566 N.E.2d 1365.) We believe these statements as to negligence are even more true with regard to the burden of anticipating and preventing intentional misconduct (see Thornburg v. Crystal Lake Park District (1988), 171 Ill.App.3d 329, 333, 121 Ill.Dec. 385, 525 N.E.2d 191 (no duty to prevent intentional misconduct at park's ice skating rink because very cumbersome burden)), and *590 thus we follow Popp and hold there is no duty for a landowner to prevent misconduct when the landowner has no unique knowledge of the possible danger.
Because plaintiff cannot establish that the defendant had any special relationships with him or Tony, there was no duty to protect plaintiff from intentional misconduct. In analyzing the instant case, we find Thornburg to be directly applicable. In Thornburg, a skater had intentionally struck the plaintiff with a hockey stick, and the plaintiff sued the park district for providing inadequate supervision at its skating rink. The Thornburg plaintiff, as in the instant case, claimed he decided to participate in the activity after relying on advertisements by the park district that supervision would be adequate. The Thornburg court held:
"In this case, defendant was not under a legal duty to prevent injuries to skaters caused by the intentionally tortious conduct of a third party, and no special relationship existed between defendant and either plaintiff or [the belligerent] which justifies imposing a duty upon defendant or giving plaintiff a special right to protection. Therefore, under the Restatement, defendant does not owe plaintiff a duty to supervise and control the intentionally tortious conduct of others." (Thornburg, 171 Ill. App.3d at 333, 121 Ill.Dec. 385, 525 N.E.2d 191.)
We likewise conclude in this case that the defendant owed no duty to prevent the intentional misconduct which occurred.
Plaintiff attempts to distinguish Thornburg in two ways. First, plaintiff claims that the defendant in the instant case had greater warning than the defendant in Thornburg of the impending misconduct. However, foreseeability has no bearing on the analysis of duty which Thornburg provides above. In addition, Popp imposes a duty on the defendant only when it has unique knowledge of the impending misconduct, irrespective of foreseeability. (Popp, 244 Ill.App.3d at 95-96, 184 Ill.Dec. 558, 613 N.E.2d 1150.) Plaintiff also distinguishes Thornburg by disputing that the tackle in the instant case was intentional misconduct, asserting instead that the tackle was an "egregious but not intentional breach of the rules." This implausible claim is contradicted both by the facts and by plaintiff's previous descriptions of the tackle, which he has called an "act of violence" in his complaint, jury instructions, and arguments in front of the jury.

II
Even if the conduct at issue had been unintentional, the defendant would still have no duty towards the plaintiff to enforce its own rules. Illinois courts have generally upheld the common law principle that municipalities are not liable in tort and owe no duty to individual members of the general public for failure to enforce local laws and ordinances. (Thames, 269 Ill.App.3d at 212, 206 Ill.Dec. 440, 645 N.E.2d 445; Burdinie v. Village of Glendale Heights (1990), 139 Ill.2d 501, 507-08, 152 Ill.Dec. 121, 565 N.E.2d 654.) This court in Thames explained one rationale of this doctrine: "`If the failure of the city to enforce this ordinance should render it liable for injuries sustained thereby, the tremendous exposure to liability would certainly dissuade the city from enacting ordinances designed for the protection and welfare of the general public, and thereby the general public would lose the benefit of salutary legislative enactments.'" (Thames, 269 Ill.App.3d at 213, 206 Ill.Dec. 440, 645 N.E.2d 445; quoting Stigler v. City of Chicago (1971), 48 Ill.2d 20, 24-25, 268 N.E.2d 26.) Another rationale was stated in Fryman v. JMK/Skewer: "In order to carry out his duties in the public's interests, the public servant must be free from the threat of a lawsuit by those adversely affected by his discretionary decision." Fryman v. JMK/Skewer, Inc. (1985), 137 Ill.App.3d 611, 615, 92 Ill.Dec. 178, 484 N.E.2d 909.
However, a plaintiff can establish a municipal duty if he can show the municipality owes him a special duty that is different from that owed to the general public. (Thames, 269 Ill.App.3d at 213, 206 Ill.Dec. 440, 645 N.E.2d 445; Burdinie, 139 Ill.2d at 508, 152 Ill.Dec. 121, 565 N.E.2d 654.) Illinois courts have established four requirements to establish a "special duty": (1) the municipality must be uniquely aware of the particular danger or risk to which the plaintiff *591 is exposed; (2) there must be allegations of specific acts or omissions on the part of the municipality; (3) the specific acts or omissions must be either affirmative or wilful in nature; and (4) the injury must occur while the plaintiff is under the direct and immediate control of employees or agents of the municipality. Thames, 269 Ill.App.3d at 213-214, 206 Ill.Dec. 440, 645 N.E.2d 445; Doe v. Calumet City (1994), 161 Ill.2d 374, 386, 204 Ill.Dec. 274, 641 N.E.2d 498.
We conclude that plaintiff cannot satisfy parts (1) and (4) of the test and therefore cannot establish a special duty on the part of defendant. As to the first test, plaintiff's testimony indicates that he was considerably more aware of the particular danger from Tony than the defendant was, and thus the defendant was not uniquely aware of the dangers of Tony's rough play. (See Burdinie, 139 Ill.2d at 525, 152 Ill.Dec. 121, 565 N.E.2d 654.) The fourth test requirement is met where the public employee creates a position of peril ultimately injurious to a plaintiff, as opposed to situations where a plaintiff merely seeks protection from the public employee which is not provided. (Burdinie, 139 Ill.2d at 524, 152 Ill.Dec. 121, 565 N.E.2d 654.) Because the latter situation occurred in the instant matter, plaintiff also cannot satisfy this requirement. See Doe, 161 Ill.2d at 387, 204 Ill.Dec. 274, 641 N.E.2d 498 (police did not bring intruder, control of the scene insufficient); Burdinie, 139 Ill.2d at 525, 152 Ill.Dec. 121, 565 N.E.2d 654 (plaintiff voluntarily joined the swimming class where he was injured); Marvin v. Chicago Transit Authority (1983), 113 Ill.App.3d 172, 177, 68 Ill.Dec. 786, 446 N.E.2d 1183 (no control found when police officer refused to accompany plaintiff to subway and plaintiff was later beaten by thugs).
Although plaintiff claims that there must be a duty to enforce rules promulgated for his safety, a vast number of precedents preclude any liability against a municipal corporation for its failure to enforce its rules, codes, or ordinances when no special duty is established. In Thames, this court held there was no duty by a high school towards individuals to keep weapons off its campus. In Arizzi v. City of Chicago (1990), 201 Ill. App.3d 368, 372, 147 Ill.Dec. 68, 559 N.E.2d 68, this court found no duty towards individuals to enforce building codes, permits, and inspections because they are not meant to be an insurance policy by which the municipality guarantees the safety of buildings for individuals. (See also Ferentchak v. Village of Frankfort (1985), 105 Ill.2d 474, 86 Ill.Dec. 443, 475 N.E.2d 822.) Likewise, the touch football rules in the instant case were not meant to be an insurance policy that no unnecessary roughness would occur. In Fryman (137 Ill.App.3d at 615, 92 Ill.Dec. 178, 484 N.E.2d 909), the county was not liable for the failure to properly enforce the county health ordinances. In Yeater v. Decatur Park District, the fact that the park district voluntarily undertook to supervise its skating rink by adopting rules and regulations and posting notices did not render the district liable for deficiencies in such supervision. (Yeater v. Decatur Park District (1972), 8 Ill.App.3d 957, 290 N.E.2d 282.) The supreme court has held that police officers have no duty towards individuals to deter speeding. Curtis v. County of Cook (1983), 98 Ill.2d 158, 74 Ill.Dec. 614, 456 N.E.2d 116.
A case similar to the instant matter is Blankenship v. Peoria Park District (1994), 269 Ill.App.3d 416, 207 Ill.Dec. 325, 647 N.E.2d 287, in which the court specifically rejected the plaintiff's claim that internal rules created a duty on the part of the park district to supervise adult swimmers. Blankenship stated, "`[A] legal duty is normally not established through rules * * * or internal guidelines.'" (Blankenship, 269 Ill. App.3d at 422, 207 Ill.Dec. 325, 647 N.E.2d 287, quoting Quinn v. Sigma Rho Chapter of Beta Theta Pi Fraternity (1987), 155 Ill. App.3d 231, 238, 107 Ill.Dec. 824, 507 N.E.2d 1193.) While finding such a rule violation could be evidence of negligence, Blankenship concluded, "The failure to comply with self-imposed regulations does not necessarily impose upon municipal bodies and their employees a legal duty." Blankenship, 269 Ill. App.3d at 423, 207 Ill.Dec. 325, 647 N.E.2d 287.
Plaintiff admits it could not locate any precedents to support its theory that the *592 defendant had a duty to enforce its officiating rules or any safety rules. The plaintiff contends that a duty to enforce rules would have been created but for the impact thus far of the Tort Immunity Act, but this claim is erroneous. Neither Arizzi nor Ferentchak nor Fryman relied on the Tort Immunity Act when it concluded a municipality owes no duty to enforce its codes and ordinances. Plaintiff's other citations are to cases on the duty to warn or the duty to provide safe equipment, issues which are inapposite to the duty alleged by plaintiff and cannot support his contentions. We conclude that plaintiff cannot establish a duty or special duty for the defendant to enforce its officiating rules.

III
Lastly, even if the defendant had any duties to the plaintiff individually, we hold that the plaintiff failed to prove wilful and wanton conduct as a matter of law. The question of whether defendant is liable for wilful and wanton behavior is ordinarily a question for the jury. (Canning v. Barton (1994), 264 Ill.App.3d 952, 955, 202 Ill.Dec. 163, 637 N.E.2d 702.) A judgment n.o.v. can be granted only where all evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand. (Green v. Chicago Park District (1993), 248 Ill.App.3d 334, 336, 187 Ill.Dec. 923, 618 N.E.2d 514; Pedrick v. Peoria & Eastern R.R. Co. (1967), 37 Ill.2d 494, 510, 229 N.E.2d 504.) However, whether wilful or wanton conduct exists may be a question of law when appropriate. Canning, 264 Ill.App.3d at 955, 202 Ill.Dec. 163, 637 N.E.2d 702; Toller v. Plainfield School District 202 (1991), 221 Ill.App.3d 554, 558, 164 Ill.Dec. 29, 582 N.E.2d 237; Lynch v. Board of Education of Collinsville Community Unit District No. 10 (1980), 82 Ill.2d 415, 431, 45 Ill.Dec. 96, 412 N.E.2d 447.
The plaintiff is required to establish wilful and wanton conduct under the Tort Immunity Act because an action alleging mere negligence by the referees would be barred by the statute. (See 745 ILCS 10/3-108(a) (West 1992); Ramos v. City of Countryside (1985), 137 Ill.App.3d 1028, 1032, 92 Ill.Dec. 607, 485 N.E.2d 418.) The statute defines wilful and wanton conduct as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." (745 ILCS 10/1-210 (West 1992).) Wilful and wanton conduct, as contemplated in section 1-210, consists of more than mere inadvertence, incompetence, or unskillfulness. (Bialek, 267 Ill. App.3d at 865, 204 Ill.Dec. 924, 642 N.E.2d 825.) In analyzing the design of the Tort Immunity Act, this court recently wrote:
"Public officials should be free to exercise or not exercise their discretion without fear of having to answer in damages for a wrong decision. That is the clear purpose of the statutory immunity scheme established by the Tort Immunity Act." Jefferson v. City of Chicago (1995), 269 Ill. App.3d 672, 678, 207 Ill.Dec. 218, 646 N.E.2d 1305 (city immune from decisions as to where to place traffic signs, but must install signs in a reasonably safe manner once the decision is made).

In the instant case, the plaintiff claims that the referees' imposition of penalties for rough tactics was insufficient to deal with the situation. However, the penalties demonstrate that the referees were not "utterly indifferent" to the plaintiff's safety, but instead used their discretion in a way that was inadequate. Taken in the light most favorable to the plaintiff, the referees made incompetent discretionary decisions. However, this can prove at most a negligent exercise of the referees' discretion, and thus fails to show wilful and wanton conduct as a matter of law. See Siegmann v. Buffington (1992), 237 Ill.App.3d 832, 834, 178 Ill.Dec. 515, 604 N.E.2d 1038 (no wilful and wanton conduct when defendant took reasonable, but careless and inadequate, steps to remedy situation after first fight); Templar v. Decatur Public School District No. 61 (1989), 182 Ill.App.3d 507, 513, 131 Ill.Dec. 7, 538 N.E.2d 195 (no wilful and wanton conduct when a school takes action to remedy situation after first fight, even if unsuccessful).
Several cases have specifically held that inadequate sports supervision was insufficient *593 to support a finding of wilful and wanton conduct, even when safety rules were not followed. In Lynch, the Illinois Supreme Court reversed a jury verdict for the plaintiff. The plaintiff was a girl playing in a "powderpuff" tackle football game, and she suffered head injuries when the only protective gear she used was a mouthpiece. Even though the game was played without safety equipment required under rules of the Illinois High School Association, the court held that the teachers running the game were innocent of wilful and wanton misconduct as a matter of law because the evidence did "not demonstrate an utter and conscious disregard for the safety of the girls, simply insufficient precautions for their protection." (Lynch, 82 Ill.2d at 430, 45 Ill.Dec. 96, 412 N.E.2d 447.) In Toller, the defendant allowed a wrestling injury to occur by failing to implement written guidelines as to the proper weight classifications between competitors, but this conduct was insufficient as a matter of law to be wilful and wanton. (Toller, 221 Ill.App.3d at 558, 164 Ill.Dec. 29, 582 N.E.2d 237.) In Oravek v. Community School District 146 (1994), 264 Ill.App.3d 895, 202 Ill.Dec. 15, 637 N.E.2d 554, this court held that the plaintiff did not establish wilful and wanton conduct when a school knowingly allowed a skateboard ramp to remain on its property. The ramp was a violation of school rules, but such behavior did not rise to the level of utter indifference to the plaintiff's safety necessary to show wilful and wanton conduct. Oravek, 264 Ill.App.3d at 900, 202 Ill.Dec. 15, 637 N.E.2d 554.
Other sports supervision cases have reached the same conclusions as Lynch and Toller. In Ramos, the plaintiff accused the defendant of inadequate supervision of a game of "bombardment," allowing an older child to injure a younger one. Ramos concluded that the failure to adequately supervise a game could not sustain a finding of wilful and wanton conduct as a matter of law. (Ramos, 137 Ill.App.3d at 1033, 92 Ill.Dec. 607, 485 N.E.2d 418.) In Poelker v. Warrensburg-Latham Community Unit School District No. 11 (1993), 251 Ill.App.3d 270, 278, 190 Ill.Dec. 487, 621 N.E.2d 940, it was not wilful and wanton conduct when inadequate supervision of a track meet resulted in a participant being struck by a discus.
Other inadequate supervision cases have also concluded that such behavior was not wilful and wanton. Illinois courts have consistently held that a teacher's mere act of leaving children unsupervised will not be sufficient to establish wilful and wanton misconduct. (Jackson v. Chicago Board of Education (1989), 192 Ill.App.3d 1093, 1100, 140 Ill.Dec. 178, 549 N.E.2d 829.) Jackson held that leaving educably mentally handicapped students alone for 30 minutes was not wilful and wanton conduct, when there was no high probability of impending danger. (Jackson, 192 Ill.App.3d at 1101, 140 Ill.Dec. 178, 549 N.E.2d 829.) In Clay v. Chicago Board of Education (1974), 22 Ill.App.3d 437, 318 N.E.2d 153, a temporary lack of supervision was not wilful and wanton conduct even where one of the students had demonstrated violent tendencies towards another. Clay, 22 Ill.App.3d 437, 318 N.E.2d 153.
Plaintiff relies on the cases of Bernesak v. Catholic Bishop (1980), 87 Ill.App.3d 681, 42 Ill.Dec. 672, 409 N.E.2d 287, and Gammon v. Edwardsville Community Unit School District No. 7 (1980), 82 Ill.App.3d 586, 38 Ill. Dec. 28, 403 N.E.2d 43, but these cases are distinguishable. In Bernesak, the school knowingly allowed its children to participate in an inherently dangerous activity, as opposed to the inadequate supervision of a normal activity which occurred in the instant matter. In Gammon, the school did almost nothing to prevent a readily foreseeable fight. However, when a school takes action to prevent a fight, it has not engaged in wilful and wanton conduct even if its actions prove inadequate. (Templar, 182 Ill.App.3d at 513, 131 Ill.Dec. 7, 538 N.E.2d 195.) Templar held, "Gammon is easily distinguished from the case before us because here the school district made efforts to alleviate the problem between plaintiff and the offending student." (Templar, 182 Ill.App.3d at 513, 131 Ill.Dec. 7, 538 N.E.2d 195.) Because the park district implemented penalties against Tony to correct his actions, we find this case governed by the Templar rubric rather than Gammon.
*594 Because we have resolved the issues of duty and wilful and wanton conduct in the defendant's favor, we need not consider whether section 3-108(a) of the Tort Immunity Act provides absolute immunity for municipalities. (See Oravek, 264 Ill.App.3d at 900, 202 Ill.Dec. 15, 637 N.E.2d 554.) We also do not examine the agency issue or the trial errors alleged by the defendant.
For the foregoing reasons, the judgment of the trial court is reversed and set aside, and the cause is remanded for further proceedings in accordance herewith.
Reversed and remanded.
GORDON and McNULTY, JJ., concur.