BRENDA HAYES, Adm'r of the Estate of Vincent Hayes, Deceased, Plaintiff-Appellant, v. THE CITY OF CHICAGO *et al.*, Defendants-Appellees.

First District (4th Division)   No. 1—90—1964

Opinion filed June 4, 1992.

Law Offices of Terrence K. Hegarty & Associates, Ltd., of Chicago (Terrence K. Hegarty and Timothy W. Heath, of counsel), for appellant.

Kelly R. Welsh, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, and Mardell Nereim, Assistant Corporation Counsel, of counsel), for appellees.

PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

Brenda Hayes, the plaintiff and administrator of the estate of Vincent Hayes, brought a Federal civil rights action against the defendants, the City of Chicago (City) and two of its police officers, pursuant to 42 U.S.C. §1983 (1988). In her complaint, Hayes alleged the defendants deprived Vincent Hayes of liberty without due process

of law when they found Hayes in an inebriated condition, placed him in the rear compartment of an unsafe squadrol to transport him to a hospital, and caused him serious injuries which resulted in the paralysis of his entire body from the neck down. The defendants moved for summary judgment claiming that the evidence of the defendants' conduct was insufficient, as a matter of law, to establish a civil rights claim. The court granted the summary judgment motion from which the plaintiff now appeals.

According to the deposition of Officer Cisco, on January 1, 1982, police officers Wilczak and Cisco responded to a call reporting a "man down" at 424 West 67th Street in Chicago. The officers found Hayes seated on the stair landing with his back against the wall. The paramedics told the officers that Hayes was intoxicated. The officers decided to transport Hayes to a detoxification center. They asked Hayes to get up because he could not stay there. Hayes got up and walked down the stairs assisted by the police officers because he was swaying and unsteady. The officers assisted Hayes to the squadrol, where he ultimately sat on the right-side bench, slouched and leaning against the rear wall. The officers rode in the cab of the squadrol with Cisco on the passenger side and Wilczak driving. The officers had not placed Hayes under arrest, as they had no knowledge that he had committed any crime.

The rear of the squadrol where Hayes was riding was dark, except for some natural light coming through a small window on the rear door. Hayes was seated on a metal bench with no seat or shoulder restraints.

The officers drove the squadrol to the detoxification center at Wabash and 17th Street. According to Cisco's deposition, there was nothing unusual about the ride. They were travelling no faster than the posted 30-mile-an-hour speed limit, and the entire trip took approximately 10 to 12 minutes.

When they arrived at the detoxification center, the officers opened the rear door of the squadrol and Hayes was seated in approximately the same position on the bench. An employee of the detoxification center refused to admit Hayes when he would not get out of the squadrol on his own. The officers then proceeded to take Hayes to the emergency room at Mercy Hospital. Upon arrival, the officers opened the door to the rear of the squadrol where Hayes was seated in approximately the same position. Wilczak obtained a wheelchair from inside the hospital to transport Hayes. The officers told Hayes that he had to get out of the squadrol, assisted him down the stairs of the squadrol, put him into the wheelchair, and pushed him into the

emergency room. According to the deposition of the emergency room nurse, she first observed Hayes in the emergency room on a police department stretcher. Following their examination of Hayes and a reading of his X rays, Hayes was diagnosed as a quadriplegic resulting from a fracture and dislocation of his C4 and C5 vertebrae.

The plaintiff filed an action against the defendants pursuant to 42 U.S.C. §1983 (1988). The complaint alleged that the City maintained squadrols which were inherently unsafe because of design defects. Specifically, the squadrol interior rear compartment has no safety belts or restraints, there are no cushioning materials to reduce the force of the passengers impacting the interior compartment, there is nothing in the rear compartment to hold on to, there is very little light, and the squadrol contains no means by which a passenger can maintain his balance and seated position. The complaint further alleged that the City was aware of the defects because several individuals had been injured in the squadrol prior to Hayes' injury. The complaint also claimed that the police officers were aware that the squadrol was unsafe. The plaintiff further alleged that four other individuals had filed suit against the City for injuries which they had sustained while being transported in the rear compartment of a squadrol.

The defendants moved for summary judgment claiming that the evidence of the defendants' conduct was insufficient to sustain a civil rights claim. The defendants attached the affidavit of the commander of the motor maintenance division of the Chicago police department stating that from 1984 through 1987, 465 squadrols travelled an average of approximately 34,756 miles per squadrol.

A motion for summary judgment should be granted if the pleadings, depositions, admissions and affidavits on file reveal that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. (Ill. Rev. Stat. 1981, ch. 110, par. 2—1005.) Where the facts are undisputed, if a fair-minded person may draw different inferences from those facts, summary judgment cannot be granted. (*Consolino v. Thompson* (1984), 127 Ill. App. 3d 31, 468 N.E.2d 422.) The trial court granted the defendants' motion and found that the plaintiff's evidence was insufficient to meet the constitutional standard required for a civil rights action.

Hayes first contends on appeal that the trial judge applied the wrong legal standard in determining whether the defendants' conduct was sufficiently egregious to constitute a constitutional claim. The court essentially held that the proper standard to apply in cases involving substantive due process claims is whether the defendant's conduct "shocks the conscience." Hayes argues that the court should

have applied a lesser standard of "recklessness," and because the facts demonstrate that the defendants acted recklessly toward Hayes, they were not entitled to summary judgment as a matter of law.

Hayes urges this court to rely on the legal standard of "reckless behavior" set forth in *Archie v. City of Racine* (7th Cir. 1988), 847 F.2d 1211 (*en banc*), *cert. denied* (1989), 489 U.S. 1065, 103 L. Ed. 2d 809, 109 S. Ct. 1338, and adopted by the court in *Seibring v. Parcell's Inc.* (1988), 178 Ill. App. 3d 62, 532 N.E.2d 1335. The defendants, on the other hand, contend that the trial court properly relied upon *Wilkins v. May* (7th Cir. 1989), 872 F.2d 190, *cert. denied* (1990), 493 U.S. 1026, 107 L. Ed. 2d 752, 110 S. Ct. 733, and *Edwards v. May* (N.D. Ill. 1989), 718 F. Supp. 1379, in concluding that the proper standard to apply in cases involving substantive due process claims is whether the conduct "shocks the conscience."

■ Much has been written on the subject of what constitutes the duty and standard of behavior that is imposed by the Constitution on the State and its officials. The due process clause of the fourteenth amendment was intended to prevent government "from abusing [its] power, or employing it as an instrument of oppression." (*Davidson v. Cannon* (1986), 474 U.S. 344, 348, 88 L. Ed. 2d 677, 682, 106 S. Ct. 668, 670.) Its purpose is to secure the individual from the arbitrary exercise of the powers of government. (*Parratt v. Taylor* (1981), 451 U.S. 527, 68 L. Ed. 2d 420, 101 S. Ct. 1908.) The Supreme Court has, however, also made consistently clear that the due process clause "does not transform every tort committed by a state actor into a constitutional violation." *DeShaney v. Winnebago County Department of Social Services* (1989), 489 U.S. 189, 202, 103 L. Ed. 2d 249, 263, 109 S. Ct. 998, 1007, citing *Daniels v. Williams* (1986), 474 U.S. 327, 335-36, 88 L. Ed. 2d 662, 671, 106 S. Ct. 662, 667.

We believe that whether the standard of conduct that is applied to invoke constitutional liability is described as "reckless" or as "shock[ing] the conscience" is not germane to our decision in the instant case. The plaintiff relies primarily on *Archie v. City of Racine* (7th Cir. 1988), 847 F.2d 1211 (*en banc*), *cert. denied* (1989), 489 U.S. 1065, 103 L. Ed. 2d 809, 109 S. Ct. 1338. In *Archie*, the seventh circuit held that only intentional or reckless conduct violates the due process clause. (*Archie*, 847 F.2d at 1219.) The court described reckless conduct as conduct that "reflects complete indifference to risk—when the actor does not care whether the other person lives or dies, despite knowing that there is a significant risk of death." (*Archie*, 847 F.2d at 1219.) The City and the officers can be said to have deprived Hayes of his life without due process only if they intended for him to die or suf-

fer grievously or if they knew of a significant risk that Hayes would die or suffer grievously, but were indifferent to that risk. See *Salazar v. City of Chicago* (7th Cir. 1991), 940 F.2d 233.

The plaintiff claims that the defendants acted with clear indifference to the danger in which they were placing Hayes. The plaintiff points to evidence that the police officers knew that Hayes was drunk and placed Hayes in the rear of the squadrol, slouched on one of the benches and leaning against the side and rear walls. The officers made no attempt to restrain Hayes in his seat and there were no restraints in the squadrol itself. The officers made no attempt to cushion any of the exposed metal upon which Hayes could strike himself and there was nothing for Hayes to hold on to during the ride. The plaintiff further points to the poor lighting in the rear of the squadrol and the fact that the officers did not ride in the rear with Hayes. Finally, the plaintiff points to the fact that the defendants do not dispute that there were at least two or three prior cases which involved injuries to "incapacitated" individuals as a result of squadrol rides.

The defendants' affidavit illustrates that City squadrols travel approximately four million miles a year throughout the City and that each squadrol travels an average of 34,756 miles per year. We view this evidence in conjunction with the plaintiff's evidence of two to three other squadrol injuries, the depositions describing the sequence of events, and the plaintiff's allegations of the defendants' indifference to the welfare of Hayes. We also consider the fact that squadrols are commonly used by the City to transport intoxicated individuals to hospitals and detoxification centers. There is nothing in the record to indicate that the squadrol which was used to transport Hayes was in any way different from any of the other squadrols which the City maintains.

In light of all of the evidence in the record, we find that the plaintiff failed to establish that the defendants' conduct rose to the magnitude of a constitutional violation. (*Consolino v. Thompson* (1984), 127 Ill. App. 3d 31, 468 N.E.2d 422.) While the plaintiff's allegations may support a claim for negligence, neither negligence nor gross negligence is a sufficient basis for constitutional liability. (*Archie v. City of Racine* (7th Cir. 1988), 847 F.2d 1211 (*en banc*).) Thus, the defendants' motion for summary judgment was properly granted.

The defendants also argue on appeal that the due process clause cannot be invoked in a situation such as this one because Hayes was not held in custody against his will. The defendants point to *DeShaney v. Winnebago County Department of Social Services* (1989), 489 U.S. 189, 103 L. Ed. 2d 249, 109 S. Ct. 998, for the proposition that

the government only has a duty to protect an individual when the State has taken a person into custody and held him there against his will. The defendants contend that since Hayes voluntarily accompanied the police officers into the squadrol, he was not held in custody against his will, and the due process clause is not implicated.

The Court in *DeShaney* stated:

"The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf ***. In the substantive due process analysis, it is the State's affirmative act of restraining the individual's freedom to act on his own behalf—through incarceration, institutionalization, or other similar restraint of personal liberty—which is the 'deprivation of liberty' triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interests against harms inflicted by other means." 489 U.S. at 200, 103 L. Ed. 2d at 262, 109 S. Ct. at 1005-06.

■■ In the case at bar, Hayes was neither coerced nor persuaded by the officers to accept their protection. Hayes was never placed under arrest and walked to the squadrol assisted by the officers. Hayes became voluntarily intoxicated, and it cannot be said that it was the State that imposed upon his freedom to act on his own behalf. While we have already established that summary judgment was proper, it can also be said that Hayes was not sufficiently deprived of his liberty to trigger the protections of the due process clause.

■ The plaintiff's final contention is that the trial court abused its discretion when it denied her leave to amend her complaint to add common-law tort claims against the defendants. The plaintiff's original complaint asserted common-law tort claims against the defendants, but the plaintiff abandoned those claims early in the litigation process pursuing only the civil rights action. The plaintiff filed several amended complaints and none of them reinstated the common-law claims. The plaintiff requested leave to file an amended complaint after the court granted the defendants' summary judgment motion, but the court denied the motion.

A trial court has authority to permit amendments to pleadings when it is just and reasonable and when it will further the ends of justice. *Siebert v. Continental Oil Co.* (1987), 161 Ill. App. 3d 891, 515 N.E.2d 728.

In the case at bar, the proposed amendment to assert common-law tort claims against the defendants cures the defects in the pleadings.

610

The defendants would not sustain prejudice or surprise as a result of the amended pleading since the evidence to support either the civil rights action or the common-law claim is essentially the same. Little, if any, additional discovery would be required if the amendment were allowed. The plaintiff has also offered sufficient justification for not pursuing her alternative common-law theory of recovery earlier in the proceedings. Moreover, despite the fact that the plaintiff had previous opportunities to amend the complaint, the only just and reasonable approach is to allow the plaintiff to amend.

Thus, we conclude the trial court abused its discretion when it denied the plaintiff's motion for leave to file an amended complaint. We accordingly remand for further proceedings not inconsistent with this opinion.

Affirmed in part; reversed in part.

JOHNSON and McMORROW, JJ., concur.