JAMES T. MORAN, Plaintiff-Appellant, v. THE CITY OF CHICAGO *et al.*, Defendants-Appellees (Leroy Bauman, Indiv. and as a Police Officer of the City of Chicago, Defendant).

First District (3rd Division)   No. 1—94—3662

Opinion filed February 5, 1997.—Rehearing denied March 26, 1997.

748

Timothy T. McLaughlin, of Timothy T. McLaughlin Ltd., of Oak Lawn, for appellant.

Susan S. Sher, Corporation Counsel, of Chicago (Lawrence Rosenthal,

Benna Ruth Solomon, and George J. Yamin, Jr., Assistant Corporation Counsel, of counsel), for appellees.

JUSTICE GORDON delivered the opinion of the court:

Plaintiff, James T. Moran, brings this appeal pursuant to Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)) from the dismissal of counts IV through VI of his complaint against defendants, Sergeant Patrick Brogan,[1] the City of Chicago, and five John Doe police officers. Plaintiff's complaint sought to recover for injuries he sustained when Leroy Bauman[2] attacked him while he was being questioned by Brogan and the John Doe officers after they had broken up a physical altercation between the plaintiff and Bauman. Count IV alleged that the defendants owed the plaintiff a special duty and that they had acted willfully and wantonly in failing to protect the plaintiff from Bauman. Counts V and VI alleged that Brogan and the John Doe defendants had deprived the plaintiff of his federal civil rights, specifically, liberty/personal security and access to the courts, guaranteed under 42 U.S.C. § 1983 (1988). Pursuant to section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619 (West 1994)), Brogan and the City of Chicago moved to dismiss plaintiff's tort claims encompassed in count IV based upon the immunity provisions of sections 4—102, 2—204, 2—202, and 2—109[3] of the Local Governmental and Governmental Employees Tort Immunity Act (the Tort Immunity Act) (745 ILCS 10/4—102, 2—204, 2—202, 2—109 (West 1994)). In a separate motion, Brogan moved to dismiss counts V and VI pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1994)) for failure to state a cause of action. The trial court granted both motions and dismissed counts IV, V and VI.

The issues raised on appeal are: (1) whether count IV of the complaint alleged sufficient facts to establish that Brogan and the City of Chicago (hereinafter referred to as the defendants) owed the plaintiff a special duty; (2) whether count IV alleged sufficient facts of willful and wanton conduct; (3) whether count V stated a cause of action for violation of civil rights under 42 U.S.C. § 1983 based upon allegations

---

[1] Plaintiff's complaint misidentified Sergeant Brogan's last name as "Grogan."

[2] Counts I through III, which are directed at defendant Bauman, remain pending in the trial court and are not the subject of the instant appeal.

[3] In their motion to dismiss, the defendants mistakenly cited to section 2—103 rather than section 2—109 of the Tort Immunity Act for their contention that the city was not liable if its employees were not liable.

that the defendants deprived the plaintiff of his liberty and personal security rights; and (4) whether count VI stated a cause of action for violation of 42 U.S.C. § 1983 based upon allegations that the plaintiff was denied his constitutional right of access to the courts.

■ A motion to dismiss a complaint pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1994)) attacks the legal sufficiency of the complaint, whereas a section 2—619 motion raises defects, defenses or other affirmative matter that appears on the face of the complaint or is established by external submissions that act to defeat the plaintiff's claim (735 ILCS 5/2—619 (West 1994)). See *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 639 N.E.2d 1282 (1994); *Lawson v. City of Chicago*, 278 Ill. App. 3d 628, 662 N.E.2d 1377 (1996). While statutory immunity is affirmative matter that can be raised in a section 2—619 motion, it is better suited as support for a section 2—615 pleading-based motion that challenges the legal sufficiency of the plaintiff's complaint. See *Calloway v. Kinkelaar*, 168 Ill. 2d 312, 331-32, 659 N.E.2d 1322, 1331-32 (1995) (Freeman, J., specially concurring); *Lawson*, 278 Ill. App. 3d 628, 662 N.E.2d 1377. Here, since the defendants' section 2—619 motion did not raise any new factual matter, the question on appeal is the same whether defendants' motion is considered to be a section 2—615 or a section 2—619 motion; that is, whether, under the allegations as pleaded in the plaintiff's complaint, the defendants were immune from liability as a matter of law. *Calloway*, 168 Ill. 2d at 332, 659 N.E.2d at 1332. See *Lawson*, 278 Ill. App. 3d 628, 662 N.E.2d 1377; *Thames v. Board of Education*, 269 Ill. App. 3d 210, 645 N.E.2d 445 (1994).

## I. Special Duty

■ Pursuant to the common law public duty rule, municipalities and law enforcement officials owe no duty to protect individual citizens. *Leone v. City of Chicago*, 156 Ill. 2d 33, 619 N.E.2d 119 (1993); *Burdinie v. Village of Glendale Heights*, 139 Ill. 2d 501, 565 N.E.2d 654 (1990), *overruled in part on other grounds*, *McCuen v. Peoria Park District*, 163 Ill. 2d 125, 643 N.E.2d 778 (1994). Similarly, under the Tort Immunity Act, a public employee is not liable for acts or omissions occurring within the scope of his employment (745 ILCS 10/2—204 (West 1994)); and the public entity is not liable when its employee is not liable (745 ILCS 10/2—109 (West 1994)). With respect to police protection, the Tort Immunity Act provides that neither a public entity nor its employee is liable for failure to provide police protection service or adequate police protection service or for failure to prevent the commission of crime. 745 ILCS 10/4—102 (West 1994).

However, with respect to the latter, the Act further provides that, while police officers are not liable for injuries caused by acts or omissions in the execution and enforcement of the law, they are liable if their conduct is willful and wanton. 745 ILCS 10/2—202 (West 1994).

■ The special duty doctrine is an exception to the common law public duty rule and to the Tort Immunity Act. *Calloway*, 168 Ill. 2d 312, 659 N.E.2d 1322; *Leone*, 156 Ill. 2d 33, 619 N.E.2d 119. But see *Calloway*, 168 Ill. 2d at 331, 659 N.E.2d at 1331 (Freeman, J., specially concurring); *Leone*, 156 Ill. 2d at 43, 619 N.E.2d at 124 (Bilandic, J., dissenting); *Leone*, 156 Ill. 2d at 49, 619 N.E.2d at 127 (Heiple, J., dissenting) (challenging notion that special duty doctrine is exception to Tort Immunity Act).[4] In accordance with that exception, if circumstances arise whereby care or custody is exercised over a specific individual by a municipality or public official so that an affirmative duty to exercise care on behalf of that individual comes into existence, the failure to carry out that duty in a nonnegligent manner is actionable. *Thames*, 269 Ill. App. 3d 210, 645 N.E.2d 445. To invoke this special duty exception, the plaintiff must prove the following four elements: (1) unique awareness of a particular danger or risk to which the plaintiff was exposed; (2) specific acts or omissions; (3) specific acts that are affirmative or willful in nature; and (4) injury to the plaintiff while under the direct and immediate control of municipal employees or agents. *E.g., Doe v. Calumet City*, 161 Ill. 2d 374, 641 N.E.2d 498 (1994); *Leone*, 156 Ill. 2d 33, 619 N.E.2d 119; *Burdinie*, 139 Ill. 2d 501, 565 N.E.2d 654; *Lawson*, 278 Ill. App. 3d 628, 662 N.E.2d 1377. Here, as will be discussed below, plaintiff's complaint does not allege sufficient facts to establish the fourth element of the special duty exception, namely, direct and immediate control.

■ Generally, the control element is established by allegations that the defendants initiated the circumstances that created the dangerous condition or that the defendants called the plaintiff into a position of peril. *Doe*, 161 Ill. 2d 374, 641 N.E.2d 498; *Burdinie*, 139 Ill. 2d 501, 565 N.E.2d 654. The control element has been found to exist where police officers ordered plaintiffs to move to or took them to certain areas of danger. *E.g., Leone*, 156 Ill. 2d 33, 619 N.E.2d 119 (ordering motorist to halt in traffic and directing her to stand in the street); *Brooks v. Lundeen*, 49 Ill. App. 3d 1, 364 N.E.2d 423 (1977) (ordering motorist to park next to road block when speeding motorist was approaching); *Gardner v. Village of Chicago Ridge*, 71 Ill. App. 2d 373, 219 N.E.2d 147 (1966) (bringing witness to side of highway to identify four suspects).

---

[4]See footnote 5, *infra*, for a more detailed discussion.

In the instant case, plaintiff's complaint alleged that, at approximately 3:45 a.m., on August 9, 1989, Leroy Bauman became involved in a physical altercation with a Chicago police officer in a tavern called the Whistle Stop Inn; that the plaintiff, who was an off-duty Cook County deputy sheriff, entered the Whistle Stop Inn to assist the police officer; that physical contact was made between Bauman and the plaintiff; and that the altercation continued on the public sidewalk outside the inn. The complaint further alleged that Sergeant Brogan and the John Doe defendants arrived, intervened, separated plaintiff and Bauman, and "surrounded and detained" the plaintiff to investigate and determine whether to arrest the plaintiff for battery. The complaint stated that, while the plaintiff was being "interrogated," Bauman shouted and screamed, demanded that the plaintiff be arrested, threatened to physically attack the plaintiff, and thereupon violently punched him in the face and knocked him to the ground, causing injuries to him.

Count IV of plaintiff's complaint purports to raise a special duty and willful and wanton conduct. It alleges that the city, Brogan and the John Doe defendants had actual knowledge that Bauman had violent propensities, that Bauman was intoxicated, and that Bauman was screaming and threatening the plaintiff with physical harm. It further alleges that, while possessed of that knowledge, the defendants "detained and interrogated the Plaintiff in such proximity to *** Bauman that they put the Plaintiff in a position where he was unable to visually monitor Bauman's conduct and where the Plaintiff was unable to physically defend himself from the previously threatened attacks of Bauman." It further alleged that the defendants acted willfully and wantonly by failing to take the necessary steps to physically restrain Bauman and to prevent him from gaining access to the plaintiff and, as a result of those failures, the plaintiff sustained injuries.

The plaintiff argues that his allegations establish that the defendants had direct and immediate control based on the fact that they surrounded, detained and questioned him. The defendants urge, on the other hand, that the control element is absent because the plaintiff has not alleged that they initiated the circumstances that created the condition of peril. They argue that the condition of peril, namely, the physical altercation and hostility between Bauman and the plaintiff, existed before they arrived on the scene. See *Doe*, 161 Ill. 2d 374, 641 N.E.2d 498 (control element absent where condition of peril existed at the time the police arrived).

■ In its present posture, the plaintiff's complaint does not allege sufficient facts showing that the defendants initiated the circum-

stances that created the dangerous condition or that they called the plaintiff into a position of peril. Here, as in *Doe*, the defendants arrived on the scene and found the plaintiff and Bauman engaged in a physical altercation. That altercation, which was the dangerous condition, existed when the defendants arrived. The plaintiff does not allege that the defendants changed that condition so as to create a new condition of danger. The plaintiff also does not allege that he was ordered to stand at the specific location wherein the subsequent attack by Bauman occurred or that he was denied all freedom of movement within the locale of the scene of the occurrence. Allegations that the defendants "detained," "surrounded" and "interrogated" the plaintiff do not denote the restraint of all movement. All that can be gleaned from these words is that the officers stopped the plaintiff at the scene of the altercation so that they could perform their investigatory function. Those words do not denote that the police ordered or compelled the plaintiff to stand in the specific spot wherein the threat of danger existed. *Cf. Anthony v. City of Chicago*, 168 Ill. App. 3d 733, 523 N.E.2d 22 (1988) (police officer instructed and directed plaintiff to aid defendant fire fighters in combatting fire); *Gardner*, 71 Ill. App. 2d 373, 219 N.E.2d 147 (police officers took plaintiff to side of highway to identify suspects); *Brooks v. Lundeen*, 49 Ill. App. 3d 1, 364 N.E.2d 423 (1977) (police officers set up roadblock and directed decedent motorist to an unsafe place within the roadblock). Under the circumstances of this case, to invoke the special duty exception would impose a special duty upon police officers to protect every bystander from whom the officers elicit information at the scene of an investigation even though the police did not create the dangerous condition or summon the bystander into it.

It is the plaintiff's failure to allege facts showing that he was placed in a position of peril by the defendants that distinguishes this case from *Leone*, 156 Ill. 2d 33, 619 N.E.2d 119, the case upon which the plaintiff relies. In *Leone*, the police officer created the condition of peril by directing the plaintiff/motorist to an area between his car and hers, exposing her to the risk of serious injury from passing vehicular traffic. Here, the defendants did not create the condition of peril; they merely pursued their investigation at the scene where that condition already existed. *Doe*, 161 Ill. 2d 374, 641 N.E.2d 498. While the complaint alleges that the police officers interrupted the altercation between the plaintiff and his assailant, defendant Bauman, the complaint falls short of alleging that the officers ordered or compelled the plaintiff to stand in the particular spot which exposed him to the risk of the assault. Moreover, we also note that in *Leone* the police officer was found to have a "heightened awareness" of the

nature of the hazard that he caused the plaintiff to encounter. *Leone v. City of Chicago*, 235 Ill. App. 3d 595, 599 (1992). Here, given the fact that the plaintiff engaged in the altercation with Bauman, there is no indication that the police had any "heightened" or disparate knowledge as to the nature and scope of the risk. See *Burdinie*, 139 Ill. 2d 501, 565 N.E.2d 654. Under these circumstances, the element of direct and immediate control cannot be established; and the plaintiff has failed to sufficiently plead the existence of a special duty.[5]

---

[5]The defendants contend, for the first time on appeal, that the special duty exception violates section 4 of the Illinois Constitution of 1970 (Ill. Const. 1970, art. IV, § 4), which abolished sovereign immunity "[e]xcept as the General Assembly may provide by law." The defendants argue that, based upon this provision, only the legislature, and not the judiciary, is empowered to override the immunity abolition and that the legislature exercised that power by promulgating the Tort Immunity Act which, *inter alia*, immunized municipalities and their police officers from liability for failure to provide police protection (745 ILCS 10/4—102 (West 1994)) and for negligently failing to execute or enforce the law (745 ILCS 10/2—202 (West 1994)).

Support for defendants' argument can be found in the dissents of Justices Bilandic and Heiple in *Leone* (156 Ill. 2d at 43, 49, 619 N.E.2d at 124, 127) and in the special concurrence of Justice Freeman in *Calloway* (168 Ill. 2d at 331, 659 N.E.2d at 1331). While all three justices agree that the special duty doctrine is not an exception to the Tort Immunity Act, Justices Heiple and Freeman are of the opinion that the special duty doctrine is unconstitutional. *Calloway*, 168 Ill. 2d at 330, 659 N.E.2d at 1331 (Freeman, J., specially concurring) (the special duty exception "did not survive the constitutional abolishment of sovereign immunity"); *Leone*, 156 Ill. 2d at 51, 619 N.E.2d at 128 (Heiple, J., dissenting) ("courts cannot, by expounding a so-called special duty exception, legitimately override the Illinois Constitution and Acts passed in pursuance thereof"). Justice Bilandic is of the opinion that the special duty exception remains as an "analytical tool[ ] used to determine whether a municipality and its employee *owe an enforceable duty* to an individual claimant" (emphasis in original) (*Leone*, 156 Ill. 2d at 47-48, 619 N.E.2d at 126 (Bilandic, J., dissenting)). In accordance with Justice Bilandic's view, a plaintiff who is injured as a consequence of a police officer's act or omission in the execution or enforcement of the law must prove the existence of a special duty and then, in accordance with the Tort Immunity Act, must prove that the officer's conduct was willful and wanton. It would appear that this interpretation effectively eliminates the special duty exception, since liability could exist only upon a showing of willful and wanton conduct. See *Leone*, 156 Ill. 2d at 39, 619 N.E.2d at 122 ("[i]ncorporating a willful and wanton requirement into the special duty doctrine would

## II. Willful and Wanton Allegations

■ In addition to seeking to recover on the basis of a special duty, count IV of the plaintiff's complaint seeks to recover on the basis of the willful and wanton exception of section 2—202 of the Tort Immunity Act. Although plaintiff's count IV violates our civil practice rules, which require that each separate cause of action be stated in a separate count (735 ILCS 5/2—603(b) (West 1994)), the defendants made no motion to strike (see 735 ILCS 5/2—615 (West 1994)). Moreover, notwithstanding this technical defect, the complaint will not be dismissed unless it fails to state any cause of action, even if it is not the cause of action intended by the plaintiff. See *Doe*, 161 Ill. 2d at 388, 641 N.E.2d at 505.

■ Willful and wanton conduct is a statutory exception that defeats the immunity provided by section 2—202 of the Tort Immunity Act (745 ILCS 10/2—202 (West 1994)). *Doe*, 161 Ill. 2d at 389-90, 641 N.E.2d at 505; *Leone*, 156 Ill. 2d at 39, 619 N.E.2d at 122; *Fatigato v. Village of Olympia Fields*, 281 Ill. App. 3d 347, 666 N.E.2d 732 (1996). Section 2—202 states that a "public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." 745 ILCS 10/2—202 (West 1994). The Act defines willful and wanton conduct as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1—210 (West 1994). Willful and wanton conduct consists of more than mere inadvertence, incompetence, or unskillfulness. *Geimer v. Chicago Park District*, 272 Ill. App. 3d 629, 650 N.E.2d 585 (1995). While the question of whether conduct is "willful and wanton" is ultimately a question of fact for the jury (*Fatigato*, 281 Ill. App. 3d 347, 666 N.E.2d 732), the court must first determine as a matter of law whether the plaintiff has alleged sufficient facts such that a jury question concerning the willful and wanton nature of the defendants' conduct is created. *E.g., Doe*, 161 Ill. 2d 374, 641 N.E.2d 498; *Geimer*, 272 Ill. App. 3d 629, 650 N.E.2d 585.

■ We believe that the plaintiff has not alleged sufficient facts to present a jury question as to whether the conduct of Brogan and the

---

therefore yield the anomalous result of making recovery more difficult under the doctrine than it already is under the statute").

In view of our holding that the plaintiff has failed to allege all four elements of the special duty exception, we need not reach the constitutionality issue here.

John Doe defendants was willful and wanton. As noted above, the allegations of count IV of the complaint, which must be taken as true for purposes of the motion to dismiss, alleged that the defendants knew of Bauman's violent propensities; viewed the physical altercation between Bauman and the plaintiff when they arrived on the scene; separated Bauman and the plaintiff; heard Bauman's threats of causing physical harm to the plaintiff; and "detained" the plaintiff and questioned him while he was standing in an area close to Bauman. These factual allegations show that the defendants knew of the risk of harm posed by Bauman; that notwithstanding that knowledge, they questioned the plaintiff as he stood in an area in close proximity to Bauman; and that they failed to protect the plaintiff from Bauman's attack. Even if this alleged conduct could be sufficient to support a contention of negligence, it cannot reasonably support a contention that the defendants acted in utter indifference to or conscious disregard for the plaintiff's safety. See 745 ILCS 10/1—210 (West 1994); *Doe*, 162 Ill. 2d at 390-91, 641 N.E.2d at 506 (willful and wanton conduct alleged if a rational trier of fact could ever find that the officers' conduct showed an utter indifference to or conscious disregard for the plaintiff's safety). Here, the defendants were not indifferent to the plaintiff's safety. They had not abandoned the plaintiff or left him unprotected. See *Gammon v. Edwardsville Community Unit School District No. 7*, 82 Ill. App. 3d 586, 403 N.E.2d 43 (1980) (judgment *n.o.v.* in favor of defendant overturned; question of fact for jury existed as to whether school counselor exhibited willful and wanton conduct in releasing combative student who resumed fight immediately thereafter). Rather, immediately prior to the occurrence, the defendants stopped the altercation, separated the combatants, and attempted to question them. At the time the plaintiff was injured, the defendants were investigating the matter. These actions do not show indifference or willful and wanton conduct such that the dismissal of plaintiff's action based upon willful and wanton conduct is affirmed.

### III. Section 1983 Claims

### A. Deprivation of Liberty

The plaintiff next argues that his complaint stated a section 1983 cause of action (42 U.S.C. § 1983 (1988)) against Brogan for deprivation of his liberty interests protected by the due process clause of the fourteenth amendment (U.S. Const., amend. XIV).

The fourteenth amendment due process clause guarantees a right to be free from unjustified intrusions on personal security. *In-*

*graham v. Wright,* 430 U.S. 651, 672-74, 51 L. Ed. 2d 711, 730-32, 97 S. Ct. 1401, 1413-14 (1977). See *White v. Rochford,* 592 F.2d 381, 387 (7th Cir. 1979) (Tone, J., concurring), stating:

> "The right to personal security can hardly consist only of freedom from direct bodily harm and exclude what will often be more important, freedom from unnecessary and unjustifiable exposure to physical danger or to injury to health."

Under certain circumstances, the failure of a police officer to intervene and protect a person's personal security renders him culpable under section 1983. *Yang v. Hardin,* 37 F.3d 282 (7th Cir. 1994) (failure to intervene to prevent continued abuse of arrestee); *Wood v. Ostrander,* 879 F.2d 583 (9th Cir. 1989) (failure to provide for the physical security of female automobile passenger after arresting driver and impounding the vehicle); *White,* 592 F.2d 381 (leaving children unattended in a car parked on the highway after arresting their uncle). While mere negligence or lack of due care by the officer will not trigger the protections of the fourteenth amendment (*Daniels v. Williams,* 474 U.S. 327, 88 L. Ed. 2d 662, 106 S. Ct. 662 (1986); *Davidson v. Cannon,* 474 U.S. 344, 88 L. Ed. 2d 677, 106 S. Ct. 668 (1986)), a deliberate indifference to a person's interest in personal security could trigger those protections. *Zarnes v. Rhodes,* 64 F.3d 285 (7th Cir. 1995); *Murphy v. Walker,* 51 F.3d 714 (7th Cir. 1995); *Wood,* 879 F.2d at 588; *Hayes v. City of Chicago,* 230 Ill. App. 3d 603, 595 N.E.2d 144 (1992). Gross negligence is not sufficient; the conduct must be reckless, that is, " 'when it reflects complete indifference to risk— when the actor does not care whether the other person lives or dies, despite knowing that there is a significant risk of death.' " *Seibring v. Parcell's Inc.,* 178 Ill. App. 3d 62, 73, 532 N.E.2d 1335, 1342 (1988), quoting *Archie v. City of Racine,* 847 F.2d 1211, 1219 (7th Cir. 1988). Allegations that a government actor "should have known" are not sufficient to support a due process claim. *Zarnes,* 64 F.3d 285 (dismissing allegations of gross negligence). See *McGill v. Duckworth,* 944 F.2d 344 (7th Cir. 1991) (to establish due process claim, plaintiff must prove actual knowledge of risks; proof that official should have known is not enough).

■ For the reasons we earlier found that the plaintiff has failed to allege willful and wanton conduct, we also find that he has not alleged a deliberate or reckless indifference to plaintiff's liberty and personal security interests. In count V of his complaint, the plaintiff alleged that Brogan deprived him of his "liberty interests in bodily integrity" without due process of law. The plaintiff alleged that Brogan knew or should have known of Bauman's violent propensities, knew or should have known that Bauman had become involved

in a violent altercation with the plaintiff, and knew or should have known that Bauman was intoxicated and was continuing to threaten plaintiff with violence and injury. As in count IV, the plaintiff alleged in count V that Brogan "detained" the plaintiff and "restricted [his] ability to visually monitor [Bauman]"; "detained and restricted the Plaintiff in such a manner as to prevent the Plaintiff from physically defending himself in the event of a further attack"; and "detained Plaintiff and conducted a police interrogation in such close proximity to [Bauman] under circumstances where the Plaintiff was vulnerable to an imminent attach [sic] by Bauman."

Plaintiff's allegations as to what Brogan should have known are insufficient to support his section 1983 claim. See Zarnes, 64 F.3d 285. Count V of plaintiff's complaint also is insufficient because it does not allege any standard of conduct exhibited by Brogan nor does it allege facts showing that Brogan's conduct amounted to a deliberate indifference to the risk of harm posed by Bauman. Generally, deliberate indifference has been established by actions amounting to complete abandonment or complete failure to intervene or act on behalf of the plaintiff. See, e.g., Yang, 37 F.3d 282 (failure to intervene to prevent further beating by fellow officers); Wood, 879 F.2d 583 (abandonment); White, 592 F.2d 381 (abandonment); Riddle v. Innskeep, 675 F. Supp. 1153 (N.D. Ind. 1987) (failure to remove plaintiff's attacker from juvenile rehabilitation program). Here, Brogan is alleged to have been involved in separating Bauman and the plaintiff, detaining the plaintiff for questioning, and conducting an examination of the plaintiff in an area in close proximity to Bauman amidst Bauman's threats against the plaintiff. Since we have held that such conduct cannot reasonably be considered to be willful and wanton, which is defined by the tort immunity statute as an utter indifference or conscious disregard to the safety of another (745 ILCS 10/1—210 (West 1994)), we similarly conclude that it cannot support a contention of deliberate indifference as required under section 1983.[6]

### B. Access to the Courts

■ Plaintiff's final argument on appeal is that count VI of his complaint stated a cause of action against Brogan under section 1983 for denial or impairment of his right of access to the courts.

The right of access to the courts is constitutionally protected; and conduct under color of law that interferes with that right gives rise

---

[6]In their section 2—615 motion to dismiss plaintiff's section 1983 claims, the defendants also argued that they were entitled to qualified immunity. In view of our finding that the plaintiff has failed to sufficiently plead his section 1983 claim, we need not discuss the issue of qualified immunity.

to a cause of action under section 1983. *Vasquez v. Hernandez*, 60 F.3d 325 (7th Cir. 1995); *McKay v. Hammock*, 730 F.2d 1367 (10th Cir. 1984). See *Barrett v. United States*, 798 F.2d 565 (2d Cir. 1986) (unconstitutional deprivation of a cause of action occurs when governmental officials thwart vindication of a claim). When, for example, police officers conceal or obscure important facts about a crime from its victim, rendering hollow the right to seek redress, constitutional rights are abridged. *Vasquez*, 60 F.3d at 328. Not every act of deception in connection with judicial proceedings is actionable, however. *Bell v. City of Milwaukee*, 746 F.2d 1205, 1266 (7th Cir. 1984). To prevail on a claim for denial of access to the courts, the plaintiff must show that the concealment concerned crucial and essential information (*Hossman v. Spradlin*, 812 F.2d 1019 (7th Cir. 1987) (*per curiam*)) and that the defendant's actions resulted in some prejudice to pending or contemplated litigation (*Miller v. Fairman*, 872 F. Supp. 498 (N.D. Ill. 1994); *Stone-El v. Fairman*, 864 F. Supp. 807 (N.D. Ill. 1994)). The plaintiff must allege that he was prevented from pursuing an action or that the value of such action was reduced by the concealment. *Vasquez*, 60 F.3d at 329.

■ Here, the plaintiff's complaint alleged that defendants deprived him of his right of access to the courts to seek criminal and civil remedies by: threatening plaintiff with arrest if he persisted in pressing criminal charges against Bauman; refusing or failing to identify witnesses to Bauman's attack; refusing or failing to prepare "official police incident reports"; and refusing to call a higher ranking police officer to the scene of the occurrence or to the hospital where the plaintiff was taken after the occurrence. The complaint also alleged that Brogan additionally violated plaintiff's right of access by instructing various officers not to file written reports or disclose information concerning the incident.

Initially we note that the defendants could not deprive the plaintiff of his right to seek criminal redress against Bauman. It is the State's Attorney, not police officers, who "commence[s] and prosecute[s] all actions, suits, indictments and prosecutions, civil and criminal." 55 ILCS 5/3—9005(a)(1) (West 1994). With respect to plaintiff's right to seek civil redress, we note that the plaintiff is pursuing those remedies in counts I through III of the instant complaint. However, the fact that the plaintiff is pursuing his civil remedies against Bauman would not in and of itself require the dismissal of plaintiff's section 1983 action. As noted in *Vasquez*, the right to seek redress is abridged if police officers conceal or obscure important facts about a crime. *Vasquez*, 60 F.3d at 328 ("when police officers conceal or obscure important facts about a crime from its victims

[they] render[ ] hollow the right to seek redress"). See also *Bell,* 746 F.2d 1205 (cover-up and conspiracy by police department in defense of fellow officers during prior civil litigation); *Barrett,* 798 F.2d 565 (concealment of violations by federal government and officials and inducing false testimony during prior wrongful death action). Here, the plaintiff's allegations create the inference that a concealment occurred based upon defendants' refusal to identify witnesses to Bauman's attack and refusal to prepare "incident reports," and based upon Brogan's instruction to the officers under his command not to file those reports or disclose that information. Missing from the complaint, however, is an allegation that the withheld information was crucial and essential to plaintiff's litigation against Bauman. Also missing from complaint is an allegation that the defendants' actions substantially affected plaintiff's ability to recover against Bauman. See *Vasquez,* 60 F.3d at 329 (dismissal of access to the courts claim where plaintiff did not allege reduction in value). *Stone-El,* 864 F. Supp. at 809 (to establish denial of access of courts plaintiff must show significant detriment as a result of the objectionable conduct). Here such an allegation would be impossible since plaintiff's action against Bauman had not been resolved when plaintiff filed his right-of-access claim. See *Karim-Panahi v. Los Angeles Police Department,* 839 F.2d 621 (9th Cir. 1988) (where underlying claim remains pending, right-of-access claim is premature).[7] Given these inadequacies, the plaintiff has failed to state a cause of action for denial or impairment of his right of access to the courts. While we do not condone any of the conduct of the defendants alleged to have occurred, that conduct, as alleged, does not rise to the level of a constitutional violation of the plaintiff's right of access to the courts.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

COUSINS, P.J., and McNULTY, J., concur.

---

[7]In his appellant's brief, the plaintiff asks this court to order the entry of an order dismissing count VI without prejudice if it finds that count to be premature. Because that count is insufficient for other reasons as well and since the plaintiff does not contend that he sought a dismissal of count VI without prejudice in the court below, the entry of such an order would not be warranted on appeal.